# EXHIBIT A-PART 1

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

MOTIVA ENTERPRISES LLC,                    )
                                           )
            Plaintiff,                     )
                                           )
      vs.                                  )        C.A. No.:
                                           )
SWISS RE INTERNATIONAL S.E. f/k/a          )
SR INTERNATIONAL BUSINESS                  )
INSURANCE COMPANY PLC; LIBERTY             )
MUTUAL INSURANCE COMPANY; ZURICH           )
AMERICAN INSURANCE COMPANY;                )
CHARTIS PROPERTY CASUALTY COMPANY; )
ACE AMERICAN INSURANCE COMPANY;            )
STARR TECHNICAL RISKS AGENCY, INC.;        )
GENERAL SECURITY INDEMNITY                 )
COMPANY OF ARIZONA; ARCH INSURANCE )
COMPANY; LANCASHIRE INSURANCE              )
COMPANY LIMITED; CATLIN, LLOYD'S           )
SYNDICATE NO. 2003 SJC; QBE MARINE &       )
ENERGY SYNDICATE 1036; NAVIGATORS          )
MANAGEMENT COMPANY                         )
INC. f/k/a NAVIGATORS SPECIAL RISKS, INC. )
                                           )
            Defendants.                    )

## VERIFIED COMPLAINT

Plaintiff, Motiva Enterprises LLC ("Motiva" or "Plaintiff"), on its own behalf, by and

through its undersigned counsel, for its Verified Complaint against defendants Swiss Re

International S.E. f/k/a SR International Business Insurance Company PLC, Liberty Mutual

Insurance Company, Zurich American Insurance Company, Chartis Property Casualty Company,

ACE American Insurance Company, Starr Technical Risks Agency, Inc., General Security

Indemnity Company of Arizona, Arch Insurance Company, Lancashire Insurance Company

Limited, Catlin, Lloyd's Syndicate No. 2003 SJC, QBE Marine and Energy Syndicate 1036, and

Navigators Management, Inc., f/k/a Navigators Special Risks, Inc. (collectively, "Defendants" or

"Insurers"), alleges upon knowledge with respect to its own actions and upon information and belief as follows:

## NATURE OF THE ACTION

1.      This action presents an exigent dispute in which Motiva requests emergency relief to preclude Defendants from wrongfully pursuing arbitration in London over disputes that the parties contractually agreed to litigate in the courts of the State of Delaware.

2.      In consideration of premiums paid by Motiva, Defendants issued a Construction All Risks insurance policy to Motiva, Policy No. MHOIJ07150 (the "Policy"), indemnifying Motiva against all risks of damage to Motiva's insured property in relation to the Port Arthur Refinery Crude Expansion Project (the "Project").[1]

3.      Under the express terms of the Policy, Defendants agreed that any dispute concerning the interpretation of terms, conditions, limitations, and exclusions contained in the Policy are governed by Delaware law.

4.      Defendants also agreed to submit all disputes with Motiva, except disputes regarding the amount to be paid under the Policy, to the exclusive jurisdiction of the courts of the State of Delaware and to comply with all requirements to enable such jurisdiction.

5.      On August 22, 2012, Motiva filed an action in the Superior Court of Delaware (the "Superior Court Action") (*see* Ex. C) seeking (1) a declaratory judgment that the corrosion exclusion does not apply to this loss and (2) damages incurred as a result of fraud and misrepresentations perpetrated by the Defendants' agent Loss Adjuster, Cunningham Lindsey International (the "Adjuster").  *See* Ex. D.

---

[1] The Policy and its extensions are attached as Exhibit A, and are hereby incorporated by reference into this Verified Complaint.

6.      Notwithstanding the express provisions governing choice of law and forum selection in the Policy, Defendants filed a notice of removal removing the Superior Court Action to the United States District Court for the District of Delaware.  *See* Ex. E.

7.      On November 6, 2012, Defendants again breached the express provisions of the Policy by purporting to initiate an arbitration action in London, seeking resolution of liability issues, contract interpretation issues and conciliation of other Policy disputes, including fraud and misrepresentation claims, by a three-member ARIAS (UK) arbitration panel.  Under the Policy, all of these issues plainly fall within the exclusive jurisdiction of Delaware state courts, not a London arbitrator.  *See* Ex. F.

8.      In their unauthorized arbitration filing, Defendants demand that Motiva appoint a single arbitrator to serve on a three-arbitrator panel.  In their demand, Defendants threaten to petition ARIAS (UK) to appoint an arbitrator to fill the vacancy if Motiva fails to select an arbitrator within 14 days (*i.e.*, no later than November 20, 2012).  *See* Ex. F at 8.  Defendants' demand places Motiva in the impossible position of appointing an arbitrator for an *ultra vires* arbitration proceeding in direct violation of the Policy's terms – or risk losing its right to select an arbitrator.

9.      Accordingly, Motiva respectfully requests that this Court (1) temporarily restrain, preliminarily enjoin, and permanently enjoin Defendants from pursuing this prohibited arbitration; (2) declare that all disputes arising out of and relating to the Policy except only for those disputes regarding solely the amount to be paid must be filed in the courts of the State of Delaware; and (3) declare that Defendants have breached the terms of the Policy.

## JURISDICTION

10.     This Court has subject matter jurisdiction over this dispute pursuant to the Delaware Uniform Arbitration Act (the "DUAA"), and specifically pursuant to 10 *Del. C.* § 5702(c).

11.     This Court has jurisdiction to grant equitable and injunctive relief pursuant to 10 *Del. C.* §§ 341 and 342 and to grant declaratory relief pursuant to 10 *Del. C.* § 6501.

## PARTIES

12.     Motiva is a Delaware limited liability company that refines, distributes, and markets oil products in and throughout the eastern and southern United States.  Motiva's principal place of business is in Houston, Texas.

13.     Swiss Re International S.E. f/k/a/ SR International Business Insurance Company PLC is an excess and surplus lines company, chartered in the United Kingdom, with its principal place of business in the United Kingdom.

14.     Liberty Mutual Insurance Company is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts.

15.     Zurich American Insurance Company is a corporation organized under the laws of the State of Illinois with its principal place of business in Schaumberg, Illinois.

16.     Chartis Property Casualty Company (formerly known as AIG Casualty Company) is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York.

17.     ACE American Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

18.     Starr Technical Risks Agency, Inc. is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York.

19.     General Security Indemnity Company of Arizona is a corporation organized under the laws of the State of Arizona with its principal place of business in New York, New York.

20.     Arch Insurance Company is a corporation organized under the laws of the State of Missouri with its principal place of business in New Jersey.

21.     Lancashire Insurance Company Limited is a foreign insurer domiciled in Bermuda.

22.     Catlin, Lloyd's Syndicate No. 2003 SJC is an unincorporated association with its principal place of business in London, United Kingdom.

23.     QBE Marine and Energy Syndicate 1036 is an unincorporated association with its principal place of business in London, United Kingdom.

24.     Navigators Management Company, Inc. f/k/a Navigators Special Risks, Inc. is an unknown entity, with unknown corporate residence.  It likely is an agent for an insurer that has not been disclosed to Motiva.

## FACTS

25.     On December 10, 2007, Defendants issued the Policy to Motiva.  On its face, the Policy states that it is issued and delivered as a Texas surplus lines coverage.

26.     The Policy commenced on September 1, 2007, for an initial period expiring on July 1, 2010.  It was extended by various endorsements including Endorsement No. 010, which extended the Policy to cover the time period of June 1, 2012 to July 1, 2012.

## TERMS OF THE POLICY

27.     The Policy covers "All Risks" of Damage to the Insured Property forming part of the Project from any cause whatsoever not excluded in the Policy at the site of the Project

occurring during the period of the Policy.  The term "Damage" is defined to mean physical

damage, physical loss or physical destruction.  The "Insured Property" includes all materials,

equipment, supplies, machinery, and all other property of the Project including temporary

works/structures including spare parts, common facilities, and facilities which are improvements,

tie-ins, connections, and additions/modifications to existing facilities, pipelines, and all other

property collectively known as the Project, to the extent that the value thereof is included in the

estimated insurable value declared/intended to be included in the final insurable value.

28.     Under the Policy, Cunningham Lindsey International was appointed to serve as

Adjuster.  *See* Ex. A at 7.  The Adjuster serves as liaison between Motiva and Defendants and

analyzes claims to determine if they fall within the scope of the Policy.  Once the Adjuster

analyzes a claim and makes a recommendation as to payment, it becomes an "adjusted claim."

The Adjuster's performance is a critical predicate for payment insofar as once an "adjusted

claim" is filed, Defendants have 30 calendar days to pay the claim.  Further, acceptance of

satisfactory proof of loss to the Insurers and a loss occurrence are prerequisites to the Policy's

requirement that the Insurers advance Motiva any mutually agreed amount of the estimated loss

prior to the production of a final proof of loss.

29.     Section Ten of the Policy Schedule entitled "Law and Jurisdiction" provides that

"[i]n the event of a dispute between the Insured and Insurers this policy shall be subject to the

Law of Delaware [and] Jurisdiction of the State of Delaware, USA."  *See* Ex. A at 7.

30.     Section Four of the Policy General Conditions entitled "Mediation/Arbitration"

provides that the parties should first mediate prior to filing an arbitration action.  *See id.* at 21.

The Policy goes on to state that if mediation is unsuccessful or either party refuses to participate

in mediation, "then either party may refer the Dispute to arbitration, *in respect to quantum only*."

*See id.* (emphasis added).  Section Four reiterates that arbitration is permitted under the Policy exclusively when "the Principal Insured and the Insurer(s) shall fail to agree *as to the amount to be paid* under this Policy."  *See id.* at 22 (emphasis added).

31.     Section Thirteen of the Policy General Conditions entitled "Disputes Clause" reiterates the parties' agreement to litigate all disputes within the State of Delaware. Specifically, Section Thirteen provides that "the Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the State of Delaware."  *See id.*  Section Thirteen also limits the applicability of the arbitration clause: "For disputes *relating solely to the amount to be paid* under this Policy such disputes shall be governed by the terms of the arbitration clause."  *See id.* at 26 (emphasis added).

32.     In the event that either party commences an arbitration proceeding, the Policy mandates that that within 14 days of being called upon to select an arbitrator, the called upon party must select an arbitrator and notify the other party of its selection.  *See id.* at 22.

33.     If the called upon party fails to select an arbitrator within 14 days, then the other party shall make an application to ARIAS (UK) to appoint an arbitrator to fill the vacancy.  *See id.*

## EVENTS GIVING RISE TO THE PRESENT DISPUTE

34.     This dispute began after Motiva suffered extensive losses to its Insured Property at its Port Arthur refinery from physical damage due to caustic cracking discovered in connection with fires that occurred on or about June 9, 2012.

35.     On June 12, 2012, Motiva gave timely and proper notice of its loss to Defendants through the Adjuster.  *See* Ex. B.

36.     Thereafter, Motiva gave the Adjuster access to the Port Arthur Refinery.  The Adjuster and other representatives of Defendants, including Defendants' expert consultants, have had access to the insured site and the Damage to the Insured Property.  Motiva has diligently attempted to find ways to accommodate the Insurers' investigation, including an offer to mediate over the investigation protocol, but a stalemate still exists at the present time.  Additionally, Motiva has stored representative damaged property at its own expense for inspection and analysis by the Adjuster and Defendants.

37.     On August 22, 2012, the Adjuster issued a Reservation of Rights Letter on behalf of the Insurers addressing liability under various Policy provisions in the circumstances of this loss.  The Reservation of Rights Letter indicated that the damages may be excluded by one or more of the exclusions or other provisions of the Policy.

38.     Presently, the parties continue to dispute whether the Policy provides coverage for the Damage to the Insured Property.

39.     At all times, Motiva has complied with the claims procedures set forth in the Policy.  However, to do this day, neither the Adjuster nor Defendants have advised Motiva of any coverage determination despite reasonable time and opportunity to do so.

## PENDING LITIGATION AND ARBITRATION

40.     Motiva filed a Complaint for declaratory relief in the Superior Court of Delaware on August 22, 2012, seeking a judgment interpreting the policy terms and a declaration that the corrosion exclusion does not apply to this loss.  *See* Exhibit C.

41.     Subsequently, Motiva filed with the Superior Court a First Amended Complaint adding the Adjuster as a defendant and asserting allegations of fraud and negligent misrepresentation.  *See* Exhibit D.

42.     In contravention of the Policy's requirement that all disputes arising from the Policy be brought in Delaware state courts, Defendants removed the Superior Court Action to the United States District Court for the District of Delaware (the "District Court").  *See* Ex. E. Motiva has moved to remand the action to the Superior Court, which motion has been briefed but currently has not been resolved by the District Court.  Accordingly, the District Court has not yet determined whether it has jurisdiction to hear Motiva's claims.  *See* Ex. H.

43.     In defiance of the Policy's forum selection clause, Defendants purported to serve upon Motiva a "Notice of Arbitration and Demand for Appointment of Arbitrator" on November 6, 2012.  *See* Ex. F.

44.     On that same date, Defendants filed a Motion to Stay all litigation proceedings before the District Court pending the outcome of the London arbitration Defendants purported to initiate.  *See* Ex. G.

45.     In their Notice of Arbitration, Defendants purported to demand that "all disputes" be arbitrated.  Defendants stated that they anticipate that the issues to be arbitrated include "whether [the parties] had an agreement on the wording of Mediation/Arbitration Clause, the scope of the disputes to be arbitrated, [Motiva's] refusal to allow loss investigation and adjustment . . . the applicability, if any, of the various sub limits, the applicability, if any, of the deductible, the damages claim ([including] the basis of the claims . . . if any) made by [Motiva] in respect of alleged fraud and negligent misrepresentation . . . ."  *See* Ex. F at 7.  Thus, Defendants purported to demand that an arbitrator decide issues of liability and Policy interpretation – disputes that arise from the Policy and, pursuant to the express terms of the Policy, should be litigated in Delaware state courts.

46.     In their Notice of Arbitration, Defendants demanded that Motiva "appoint its arbitrator pursuant to the terms of the Policy [, which] provides [Motiva] 14 calendar days from being called upon to appoint an arbitrator to select an arbitrator and notify the [Defendants] of its selection." *See id.* at 8.  Therefore, according to Defendants Motiva must appoint an arbitrator no later than November 20, 2012 or waive its right to do so.  "If Motiva does not select an arbitrator [by November 20, 2012], the [Defendants] will make an application to ARIAS (UK) to appoint an arbitrator to fill the vacancy."  *See id.*

47.     As a result, Motiva has been given a Hobson's choice:  (1) appoint an arbitrator for an arbitration proceeding commenced in direct violation of the Policy's Delaware forum selection clause or (2) do nothing and risk losing the right to appoint an arbitrator.  Without a temporary restraining order and ultimately an injunction, Motiva will suffer irreparable harm by losing its contractual right to have its disputes with the Defendants decided under Delaware law as interpreted and applied by Delaware's state courts.  Money damages are an inadequate remedy to redress this irreparable harm.  Accordingly, Motiva requests injunctive and declaratory relief to prevent Defendants from circumventing the parties' contractually agreed upon choice of Delaware as the forum for dispute resolution.

## COUNT I
### (Injunction of an Arbitration Proceeding)

48.     Motiva repeats and realleges all of the preceding paragraphs as though fully set forth herein.

49.     Defendants have purported to initiate arbitration proceedings against Motiva relating to claims of liability and contract interpretation.

50.     The plain language of the Policy requires the parties to pursue all claims arising from the Policy, excluding only claims regarding the amount to be paid, in the courts of the State of Delaware.

51.     Defendants chose to ignore the parties' agreed upon choice of forum and instead initiated arbitration proceedings in London.

52.     Pursuant to the DUAA, 10 *Del. C.* § 5703(b), and 10 *Del. C.* §§ 341-42, this Court should enter an Order temporarily, preliminarily, and permanently enjoining Defendants from arbitrating any disputes with Motiva that do not relate to the amount to be paid under the Policy.  Specifically, *inter alia*, the Court should temporarily, preliminarily, and permanently enjoin Defendants from proceeding with the arbitration they purported to initiate on November 6, 2012 through their Notice to Arbitrate.

53.     Motiva has no adequate remedy at law.

## COUNT II
### (Declaratory Relief)

54.     Motiva repeats and realleges all of the preceding paragraphs as though fully set forth herein.

55.     Defendants have purported to initiate arbitration proceedings against Motiva relating to claims of liability and contract interpretation.

56.     The plain language of the Policy requires the parties to pursue all claims arising from the Policy, excluding only claims regarding the amount to be paid under the Policy, in the courts of the State of Delaware.

57.     Defendants chose to ignore the parties' agreed upon choice of forum and instead initiated arbitration proceedings in London.

58.    Thus, the issues raised by Motiva in this Verified Complaint present a controversy that:

(1) involves the rights or other legal relations of Motiva, insofar as the declaration sought will clarify what the parties' rights are under the terms of the Policy;

(2) comprises a claim of right or other legal interest by Motiva that is asserted pursuant to the Policy against Defendants who have an interest in contesting the claim to minimize or avoid their own obligations under the Policy;

(3) is between parties whose interests are real and adverse, pursuant to their differing interpretations of their rights and obligations under the Policy and applicable principles of law;

(4) is ripe for judicial declaration because: (a) Defendants have filed an arbitration action seeking to force Motiva to submit to arbitration and select an arbitrator; (b) until this Court declares that the choice of law and venue provisions are enforceable and precludes Defendants from pursuing arbitration for any claims arising out of the Policy (with the limited exception of claims for the amount to be paid), Motiva is faced with uncertainty as to its legal obligations under the Policy's provision regarding appointment of an arbitrator; and (c) as a result of the foregoing, Motiva has incurred and is continuing to incur significant expense regarding an arbitration that should never have been filed.

59.    Pursuant to 10 *Del. C.* § 6501, this Court should enter a declaration proclaiming that the Policy prohibits Defendants from arbitrating with Motiva any issues arising out of or relating to the Policy with the exception of the amount to be paid.

## COUNT III
### (Breach of Contract)

60.    Motiva repeats and realleges all of the preceding paragraphs as though fully set forth herein.

61.    The Policy is a legally valid and enforceable contract by and among Motiva and Defendants.

62.    Motiva has duly performed all of the conditions and duties imposed on it under the Policy and at all times has remained ready, willing, and able to continue doing so.

63.     By the conduct described above, including Defendants' refusal to comply with the Policy's dispute resolution provisions, Defendants have, without justification or excuse, breached their contractual duties, including their implied obligation of good faith and fair dealing owed to Motiva pursuant to the Policy.

64.     Defendants have expressly breached Sections Four and Thirteen of the Policy General Conditions and Section Ten of the Policy Schedule by initiating arbitration proceedings for claims relating to liability, Policy interpretation, and resolution of Motiva's fraud and misrepresentation claims instead of pursuing these claims in the parties' agreed upon forum of Delaware state courts.

65.     Defendants' breaches are willful.

66.     Plaintiff has suffered and continues to suffer damages in an amount to be proven as a direct and proximate result of Defendants' breaches.

## PRAYER FOR RELIEF

**WHEREFORE**, Motiva respectfully requests that this honorable Court enter judgment in favor of Plaintiff and against Defendants as follows:

A.     Temporarily, preliminarily, and permanently enjoining Defendants, and their agents, from prosecuting the arbitration that they have purported to bring against Motiva;

B.     Permanently enjoining Defendants from initiating or prosecuting any arbitration proceedings against Motiva relating to or arising out of the Policy except a proceeding limited to determination of the amount to be paid under the Policy;

C.     Declaring that the Policy prohibits Defendants from initiating or prosecuting any arbitration proceedings against Motiva relating to or arising out of the Policy except for any proceeding limited to determination of the amount to be paid under the Policy;

D.    Declaring that Defendants have breached the Policy;

E.    Awarding Motiva damages in an amount to be determined at trial;

F.    Awarding Motiva its expenses and costs incurred in bringing this action, including reasonable attorneys' fees; and

G.    Awarding Motiva such additional and further relief as the Court may deem just and proper.

MORGAN, LEWIS & BOCKIUS LLP

  */s/ Colm F. Connolly*
Colm F. Connolly (I.D. No. 3151)
Nemours Building
1007 North Orange Street
Suite 501
Wilmington, DE 19801
(302) 574-7290
cconnolly@morganlewis.com

WILKS, LUKOFF & BRACEGIRDLE, LLC

  */s/ Thad J. Bracegirdle*
Paul M. Lukoff (I.D. No. 96)
Thad J. Bracegirdle (I.D. No. 3691)
1300 N. Grant Avenue, Suite 100
Wilmington, DE 19806
(302) 225-0850
plukoff@wlblaw.com
tbracegirdle@wlblaw.com

Dated:  November 13, 2012          *Attorneys for Plaintiff Motiva Enterprises LLC*

## **VERIFICATION**

I, Christopher Vice, declare under penalty of perjury as follows:

I am General Counsel of Motiva Enterprises LLC, and as such am authorized to execute this verification. I have read the foregoing Verified Complaint and am familiar with the allegations and statements therein. I hereby verify that those allegations and statements in the Verified Complaint are true and correct to the best of my knowledge.

_____
Christopher Vice

Sworn and subscribed before me this _12_ day of
November, 2012

_____
Notary Public

LINDA D. WILLIAMS
My Commission Expires
June 4, 2015

# EXHIBIT A

# INSURANCE

By This

# Policy of Insurance

No. __MHOU07150__

The subscribers hereto, severally but not jointly, do insure __Motiva Enterprises, LLC et al__

Amount __As per Form__

| AMOUNT (100%) | RATE | PREMIUM (100%) |
|---|---|---|
| USD 750,000,000 | 4.12% per mille | USD 22,291,436 |

From __September 1, 2007__ To __July 1, 2010__

On __Port Arthur Refinery Crude Expansion Project__

Type of Insurance __Construction All Risks__

Subject to provisions, terms and conditions of the insuring form attached to and constituting a part of this policy.

Countersigned at Houston, Texas, this __10th__ day of __December__ __2007__

See Schedule of Subscribing Underwriters.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market / Carrier | Line Size / Participation | Assigned Policy Number |
|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 70080 (MW001707) |
| Liberty Mutual Insurance Company | USD 75,000,000, that being 10.00% of USD 750,000,000 | 3H688077001 |
| Zurich American Insurance Company | USD 56,250,000, that being 7.50% of USD 750,000,000 | IM9002127-00 |
| AIG Casualty Company | USD 37,500,000, that being 5.00% of USD 750,000,000 | 261-21-50 |
| ACE American Insurance Company through Starr Tech | USD 30,000,000, that being 4.00% of USD 750,000,000 | CTFN04286091 |
| General Security Indemnity Company of Arizona (SCOR) | USD 30,000,000, that being 4.00% of USD 750,000,000 | 2007 10F130911-1 |
| Arch Insurance Company | USD 18,750,000, that being 2.50% of USD 750,000,000 | CAR0023080-00 |
| Lancashire Insurance Company Limited | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Navigators Special Risks, Inc. | USD 7,500,000, that being 1.00% of USD 750,000,000 | 07 NSRO 1140-01 |
| * Stellar (Saudi Aramco Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | TBD |
| * Noble (Shell Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 350-1-MOTCAR167 |

*Captive Participation not placed through Marsh.*

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO
TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS A
SURPLUS LINES COVERAGE PURSUANT TO THE TEXAS INSURANCE
STATUTES.   THE STATE BOARD OF INSURANCE DOES NOT AUDIT THE
FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURER
PROVIDING THIS COVERAGE, AND THIS INSURER IS NOT A MEMBER OF THE
PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION CREATED
UNDER ARTICLE 21.28-C, INSURANCE CODE.   ARTICLE 1.14-2, INSURANCE
CODE, REQUIRES PAYMENT OF 4.85 PERCENT TAX ON GROSS PREMIUM.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## IMPORTANT NOTICE

### TO OBTAIN INFORMATION OR MAKE A COMPLAINT:

YOU MAY CALL THE COMPANY'S TELEPHONE NUMBER FOR INFORMATION OR TO MAKE A COMPLAINT AT:

1 - 713 - 654 -0400

YOU MAY CONTACT THE TEXAS DEPARTMENT OF INSURANCE TO OBTAIN INFORMATION ON COMPANIES, COVERAGES, RIGHTS OR COMPLAINTS AT:

1 - 800 - 252 - 3439

YOU MAY WRITE THE TEXAS DEPARTMENT OF INSURANCE:

POST OFFICE BOX 149104
AUSTIN, TEXAS  78714-9104
FAX # (512) 475-1771

### PREMIUM OR CLAIM DISPUTES:

SHOULD YOU HAVE A DISPUTE CONCERNING YOUR PREMIUM OR ABOUT A CLAIM, YOU SHOULD CONTACT THE AGENT OR THE COMPANY FIRST.  IF THE DISPUTE IS NOT RESOLVED, YOU MAY CONTACT THE TEXAS DEPARTMENT OF INSURANCE.

### ATTACH THIS NOTICE TO YOUR POLICY:

THIS NOTICE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OF CONDITION OF THE ATTACHED DOCUMENT.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

# Contents

Table of Contents...........................................................................................................1

**Schedule**....................................................................................................................3

1 Named Insureds:..................................................................................................... 3

2 Period of Insurance: ...............................................................................................4

3 Project:....................................................................................................................4

4 Coverage: ...............................................................................................................4

5 Sums Insured (100%):............................................................................................5

6 Excesses (100%):...................................................................................................6

7 Loss Payee:............................................................................................................6

8 Premium: ................................................................................................................6

9 Territory:..................................................................................................................7

10 Law and Jurisdiction:............................................................................................7

11 Addresses:............................................................................................................7

**Section A: Construction All Risks** ............................................................................ 8

1 Insured Property:.....................................................................................................8

2 Coverage:................................................................................................................8

3 Basis of Loss Settlement:.......................................................................................9

4 Extensions to this Section:......................................................................................9

5 Conditions applicable to this Section....................................................................11

6 Exclusions applicable to this Section ...................................................................12

**General Exclusions**...............................................................................................15

1 Radiation:..............................................................................................................15

2 War:......................................................................................................................16

3 Terrorism:..............................................................................................................16

4 Deliberate Acts: ....................................................................................................17

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

5  Electronic Data: ................................................................................................17

6  Mould Exclusion: ..............................................................................................17

7  Asbestos Exclusion: .........................................................................................18

8  Pollution and Contamination Exclusion: ...........................................................18

**General Conditions** ...........................................................................................19

1  Definitions: .......................................................................................................19

2  Other Insurance: ..............................................................................................21

3  Cancellation: ....................................................................................................21

4  Mediation/Arbitration: .......................................................................................21

5  Permissions and Privileges: .............................................................................22

6  Claims Procedures: ..........................................................................................23

7  Proof and Payment of Loss: .............................................................................24

8  Multiple Insureds: .............................................................................................24

9  Subrogation and Release Agreement: ..............................................................25

10 Policy Voidable: ...............................................................................................25

11 Material Change: ..............................................................................................25

12 Access and Inspection: ....................................................................................26

13 Disputes Clause: ..............................................................................................26

14 Currency Clause: ..............................................................................................27

15 50/50 Clause: ...................................................................................................27

16 Interpretation: ...................................................................................................27

17 Notices: ............................................................................................................27

**Appendix A - Operations Schedule (Gantt Charts)**..........................................28

**Appendix B - Listing of Fabrication Sites** ........................................................29

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007



# Schedule

## 1  Named Insureds:

### Principal Insureds:
i)  Motiva Enterprises LLC (as Principal), and/or

ii)  Parent, subsidiary, and / or controlling companies, of the above, including joint venture and / or co-venture companies and/or companies in which they have an insurable interest in the Project, and/or

### Additional Insureds:
iii)  Bechtel / Jacobs as EPC Contractor and/or other EPC Contractors, and/or

iv)  Project Management Consultants and / or Engineering Contractors and / or Construction Contractors and / or Sub Contractors of any tier in connection with the Project and / or any works, activities and preparations connected therewith.

Coverage for manufacturers, suppliers, vendors, architects and consulting engineers being limited to their on Site manual activities only

Together with their respective successors in title and assigns for their respective rights, interests and liabilities in or arising from the Project.

MARSH

Page 3

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u> <u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## 2  Period of Insurance:

### The Period of Insurance shall consist of:

The Period of Insurance being from 00.01hrs on 1st September 2007 until the Final Completion Date being 00.01hrs on 1st July 2010, inclusive of all hot testing / commissioning / integration / and initial operations as per the schedule attached in Appendix A.

Any Damage known by or reported to the Principal prior to the 1st September 2007 is excluded. Coverage is provided for Damage to the works performed prior to the Inception date which occurs during this Period of Insurance, provided that such would have otherwise been indemnifiable hereunder.

Separately and/or individually completed items and/or sections and/or Insured Property, whether or not taken over and accepted by Principal Insured and whether or not being operated and/or taken into use, will remain covered under this Policy on behalf of all Insureds until the end of the Period of Insurance as described in the preceding paragraph.

Time and dates are local standard time at project Site.

### Extensions of Period of Insurance

All extensions to be agreed at terms to be agreed with Insurers.

## 3  Project:

The Project being the Motiva Crude Expansion Project in Port Arthur, Texas, USA.  The Project will expand the Port Arthur Refinery by the addition of a new 325 MBPD heavy/sour crude unit. Downstream process units would include a 95 MBPD delayed coker, a 75 MBPD hydrocracker, an 85 MBPD reformer, a 53 MBPD Isomerization unit and associated hydrotreating, sulphur recovery, utility systems, logistics, and other infrastructure.

Situated at and around 2100 Houston Ave., Port Arthur, TX 77641

## 4  Coverage:

### Section Ai) - Construction All Risk

All risks of Damage to the Insured Property (as defined herein) forming part of the Project.

### Section Aii) - Principal Insureds Existing Property

All risks of Damage to the Insured Property of the Principal Insured I) other than that Insured Property of Section Ai.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

# 5  Sums Insured (100%):

## Policy limits

Insurer(s) shall not be liable for more than the following limits which are in excess of the Policy
excesses:-

USD 750,000,000 any one Occurrence for Section AI plus USD 10,000,000 any one Occurrence
for Section AII.

except

USD 250,000,000 any one Occurrence and in the aggregate for the term of the Project in respect
of Windstorm and flood.

## Section A – Inner limits

- Inland transit:        USD 10,000,000 any one Occurrence,
- Offsite storage:       USD 10,000,000 any one Occurrence.
- Temporary Removal:     USD 10,000,000 any one Occurrence.
- Temporary Repairs, not forming part of the final repairs:
                         USD  5,000,000 any one Occurrence.

The above limits are inner limits to the Sum Insured stated for Section A.

## Section A – Extensions of Coverage

- Debris Removal:        10% of Loss, maximum of
                         USD 20,000,000 any one Occurrence.
- Expediting Expenses:   20 % of the Loss, a maximum of
                         USD 15,000,000 with an inner limit of
                         USD  5,000,000 for airfreight, any one
                         Occurrence.
- Public Authorities:    USD  1,000,000 any one Occurrence.
- Professional Fees:     USD  2,500,000 any one Occurrence.
- Preventative Measures: USD  5,000,000 any one Occurrence.
- Plans and Documents:   USD  1,000,000 any one Occurrence.
- Leak Search Costs:     USD  1,000,000 per any one Occurrence and
                         in the aggregate.
- Product in Storage:    USD 10,000,000 any one Occurrence and in
                         the aggregate.
- Bare Rental Contractors Equipment:  USD 55,428,221 any one
  occurrence in excess of USD 12,500,000 any one occurrence being the
  underlying policy.

The above limits are in addition to the Sum Insured stated for Section A, except where in relation to
Damage from Windstorm or flood, where the above shall be included within the limit.

The inclusion of more than one Named Insured shall not operate to increase the Insurers' limit of
liability.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## 6 Excesses (100%):

The first amount of the Named Insured's loss shall be borne by the Named Insured as follows:

- USD 10,000,000 any one Occurrence in respect of all losses, except
- 3% VARTL (Value at Risk at Time of Loss) subject to a minimum of USD 10,000,000 and a maximum of USD 20,000,000 in respect of Windstorm and flood.

In respect of Bare Rental Contractors Equipment the above excess of USD10,000,000 is to apply except where excess of a contractors underlying policy in which case a Nil excess is to apply.

In the event that the loss to Bare Rental Contractors Equipment is as a result of Windstorm and flood then the policy deductible of 3% VARTL (Value at Risk at Time of Loss) subject to a minimum of USD 10,000,000 and a maximum of USD 20,000,000 shall apply to the overall amount of the covered damage hereunder irrespective of the underlying policy.

## 7 Loss Payee:

All claims, return premiums, settlements and any other monies payable hereunder shall be payable to Motiva Enterprises LLC.

All such payments shall be made by the Insurer without any deduction or set-off on any account or of any kind, other than in respect of unpaid premiums.

A payment to the loss payee in accordance with this clause shall, to the extent of that payment, discharge the liability of the Insurer to pay the Named Insured.

## 8 Premium:

a)      Deposit Premium (all figures being 100%):

The Principal Insured shall pay a deposit premium of USD 22,291,436 adjustable at expiry at a rate of 4.12% (per mille) on the Actual Insurable Value in respect of section A estimated to be USD 5,410,542,700.

b)      Adjustment

At the expiry of the Period of Insurance, the Principal shall provide the Insurers with details of the actual insurable value. If the actual insurable value differs from the declared estimated insurable value, the premium in respect of Section A shall be adjusted at a rate of 4.12 per mille against the actual insurable value.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

### c)    Premium Payment Condition:

The deposit premium is to be paid in 3 equal installments, the first within 60 days of 1st September 2007, the second 12 months thereafter and the third a further 12 months later (the premium due dates).

It is a condition of this Agreement that the applicable premium shall be paid to insurers within 60 days of its premium due date and the Principal shall have the burden of establishing that such payment has been made.

If this condition is not complied with, this Agreement shall terminate on the above date with the Insured hereby agreeing to pay premium calculated at no less than pro rata temporis.

All other terms and conditions of this Agreement remain unchanged.


## 9  Territory:

The Policy insures the Insured Property within United States of America and Mexico.


## 10    Law and Jurisdiction:

In the event of a dispute between the Insured and Insurers this policy shall be subject to
  ▪ the Law of Delaware
  ▪ Jurisdiction of the State of Delaware, USA.


## 11    Addresses:

The address and fax number of the Principal for all notices under or in connection with this policy as follows:

|  | | | |
|---|---|---|---|
| ▪ | Address: | Motiva Enterprises LLC<br>700 Milam Street, Suite 11058<br>Houston, Texas 77002 | Shell Risk and Insurance<br>910 Louisiana, Suite 2180A<br>Houston, Texas 77002 |
| ▪ | For attention of: | Jim Castles | Anthony Dupuy |

The address and fax number of the Loss Adjustor for all notices under or in connection with this policy as follows:

  ▪ Address:            Cunningham Lindsey International, 116 John Street, Suite 1010, New York, NY 11038
  ▪ Telephone No:       212-867-3092
  ▪ Facsimile No:       212-867-3290
  ▪ For attention of:   Peter Saunderson


MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007



## Section A: Construction All Risks

### 1   Insured Property:

i)   All materials, equipment, supplies, machinery and all other property of the Project including temporary works / structures; including spare parts, common facilities and facilities which are improvements, tie-ins, connections and additions / modifications to existing facilities, pipelines and all other property collectively known as the Project, to the extent that the value thereof is included in the estimated insurable value declared / intended to be included in the final insurable value.

ii)   The existing property of the Principal Insureds (i).

### 2   Coverage:

#### Subsection I)

The cover provided by this Section will indemnify the Named Insured against All Risks of Damage to of the Insured Property described above from any cause whatsoever not hereinafter excluded,:-

i)   whilst at the Site of the Project or the fabrication sites listed in Appendix C,

ii)   whilst in transit by road or rail during loading and unloading, to the extent it is not covered by a separate cargo policy, subject to the sub limit stated in the Schedule,

iii)   during storage off-Site to the extent it is not covered by a separate policy of insurance, subject to the sub limit stated in the Schedule,

iv)   whilst temporarily removed from Site to any other location in order to avoid possible Damage which would have been indemnified hereunder, subject to sub limit stated in the Schedule,

occurring during the Period of Insurance.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## Subsection II)

All Risks of Damage to of the Insured Property II) described above from any cause whatsoever not hereinafter excluded, occurring during the Period of Insurance, providing that such a cause arises from the execution of the Project

## 3   Basis of Loss Settlement:

The basis of any loss settlement in respect of this Section shall be:

- In the case of any Damage which can be repaired the cost of repairs necessary to restore the property to its condition equal to but not better or more extensive than the original condition before the occurrence of the Damage, or
- where the Damage cannot be repaired, or the cost of repair is greater than the replacement cost, the cost to replace the damaged Insured Property, or
- in the case where the Damage is not repaired at the Principal Insured discretion, the actual value of the damaged item of Insured Property immediately prior the Damage,

Plus all reasonable or applicable freight, labour, insurance, wages, duties, profit, taxes and the like to the extent that they were originally allowed for in the estimated insurable value / intended to be included in the final insurable value and incurred in connection with the Damage. The value of any salvage will be deducted.

The cost of any temporary or provisional repair will be borne by the Insurers:-

- in full if such repair constitutes part of the final repair,
- up to the sub limit stated in the Schedule where such repair does not constitute part of the final repair, provided that the temporary repair is reasonable and necessary for the continuation of the Project.

Notwithstanding the above any Damage as indemnified hereunder occurring to the Insured Property, within the territorial limits, whilst being repaired or whilst being taken to or brought back from the place of repairs, following Damage as indemnified hereunder shall be the liability of the Insurers.

## 4   Extensions to this Section:

The coverage under this Section is extended to include:

## a)   Debris Removal:

The costs necessarily and reasonably incurred in the removal from the Site of all debris including dewatering, dismantling, demolishing, shoring up and propping up of any of the Insured Property provided such Damage, giving rise to such debris, is insured by this section. Coverage hereunder is limited to the amount stated in the Schedule.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

### b)   Expediting Expenses:

The difference in costs between those calculated at normal or standard rates of reimbursement, and those actually incurred for overtime, weekend, public holiday and shift working, and for express freight (including air freight); provided that such costs are necessarily and reasonably incurred by the additional insured for the purpose of preventing or minimising any delay in completion of the contract solely due to Damage as indemnified hereunder.

The cover provided by this clause does not include any costs incurred in altering or improving the design, the materials used or to be used, or the workmanship relating to the permanent or temporary works.

Coverage hereunder is limited to the amount stated in the Schedule.

### c)   Public Authorities:

The additional cost of reinstatement of the Damaged sections of the Insured Property as indemnifiable hereunder as may be incurred solely by reason of the necessity to comply with any regulations, bye-laws or statutory provisions relating to the reinstatement of property.

The amount recoverable under this extension shall however not include the cost of complying with any such regulations, bye-laws or statutory provisions where Damage occurs prior to inception of this Policy, or where notice has been served upon the Named Insured prior to the occurrence of any Damage, or in respect of any undamaged sections of the Insured Property.

Coverage hereunder is limited to the amount stated in the Schedule.

### d)   Fire Fighting Expenses:

Fire fighting expenses and extinguishing costs necessarily and reasonably incurred by the Named Insured to minimise the extent of any Damage to the Insured Property including the cost of materials expended and labour expenses incurred while such labour is engaged in extinguishing of a fire of the Insured Property by this Policy.

### e)   Professional Fees:

Architects', surveyors', consulting engineers', legal and other such professional fees, costs and expenses, all necessarily and reasonably incurred for the purpose of repairing, reinstating or replacing the Insured Property consequent upon Damage insured against hereunder. It is, however, noted and agreed that this extension does not include any fees incurred for preparing any claim under this Policy. Coverage hereunder is however limited to the appropriate relevant professional scale of fees subject to the limit stated in the Schedule.

### f)   Preventative Measure:

In the event of actual Damage to Insured Property as would be indemnifiable hereunder, expense incurred as a result of immediate action taken, reasonable at the time of the Occurrence to minimise such further Damage to Insured Property, provided such expense is reasonable having regard to the value of the Insured Property at risk. In the event the action taken was also to protect Damage to property of the Insured not indemnifiable under this Policy, the Insurers' indemnification under this provision shall be proportionate to the value of the Insured Property hereunder which was immediately and directly endangered by the Occurrence. Coverage under this clause however is limited to the amount stated in the Schedule.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## g)    Plans and Documents:

Costs and expenses necessarily and reasonably incurred to reproducing plans, documents and records forming part of the Insured Property Damaged as a result of Damage insured hereunder, but not for the value to the Named Insured of the information contained therein, subject to the limit stated in the Schedule.

## h)    Repeat Tests, Trials:

The cost of any repeated and/or subsequent tests and/or trials necessarily carried out as a result of Damage to the Insured Property covered under this Section.

## i)    Leak Search Costs:

The cost of searching for pipeline leaks outside of the applicable battery limit, including any earthwork on a trench not Damaged in itself but becoming necessary in the search for and repair of leaks, provided that Damage as insured hereunder is found to have occurred. Coverage hereunder is subject to 100% of all welds being checked by non destructive testing and is limited to the amount stated in the Schedule.

## j)    Product In Storage:

Damage, occurring during the Project Period only, to on-specification product stored separately to off-specification product when such is contained in a dedicated storage tank. Basis of loss settlement shall be the stated price of such at the time of the loss. The coverage provided hereunder however is for Damage caused by FLEXA Perils only. Coverage hereunder is limited to the amount stated in the Schedule.

## k)    Bare Rental Contractors Equipment:

This Policy is extended to cover Damage to Bare Rental Contractors Equipment in excess of applicable underlying policy. Coverage hereunder is limited to the amount stated in the Schedule.

## 5    Conditions applicable to this Section

It is a condition of this Section that the Named Insured shall

### a)    Storage of Materials

In respect of materials, plant or machinery at the Site, stored in the open or within any building,
- ensure that such are not stored in a location that could reasonably be predicted to flood, and are raised off the ground,
- ensure that such are stored in a watertight building, or are protected by a secure, waterproof covering, or in their original specified export packaging.

Perils: Flood / Inundation / water

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

b)   Pipelines

With regards to the pipelines, conduits and cables,
- as soon as practicable after placement, secured such against floating up or heaving; and
- seal sufficiently the open ends of pipes and conduits to prevent water ingress at the end of each working day and in the event of imminent danger from flooding.

Peril: Flood / Inundation / water

In the event that an above condition is not complied with and only to the extent that such non-compliance increases the amount of Damage due to the peril stated therein then this Section shall exclude the costs of the amount of the Increased Damage only.

## Reinstatement
The payment of any loss under this Section shall not reduce the sum insured and/or limits of liability herein. This however shall not apply where a limit is specified as an aggregate for the Period of Insurance, however such may be reinstated at additional premium with the agreement of Insurers.

# 6   Exclusions applicable to this Section
This Policy does NOT insure the following:

a)   All costs rendered necessary by defects of material workmanship design plan or specification and should Damage (which for the purposes of this exclusion shall include an patent detrimental change in the physical condition of the Insured Property) occur to any portion of the Insured Property containing any of the said defects the cost of replacement or rectification which is hereby excluded is that cost incurred to improve the original material workmanship design plan or specification.

For the purpose of this Policy and not merely this exclusion it is understood and agreed that any portion of the Insured Property shall not be regarded as Damaged solely by virtue of the existence of any defect of material workmanship design plan or specification.

b)   Damage to accounts, bills, currency, stamps, banknotes, evidence of debt, deeds or securities.

c)   Damage to any marine vessel or craft or aircraft.

d)   The cost of replacing, repairing or rectifying parts of the Insured Property rendered necessary by deterioration due to lack of use or normal atmospheric conditions, or by wear and tear, but this exclusion shall not apply to other parts of the Insured Property Damaged as a result of such wear and tear or deterioration.

e)   The Damage resulting from any mechanism of corrosion, oxidation or erosion whether sudden or gradual and regardless of any other cause or event contributing concurrently or in any sequence to the loss, but this exclusion shall not apply to other parts of the Property insured then subsequently Damaged as a result of corrosion, oxidation or erosion

f)   Consequential Financial losses of any kind.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## 6  Exclusions Continued...

g)  Loss of use, penalties, and guarantees of performance and efficiency.

h)  Loss of Insured Property arising from a disappearance or shortage discovered only at the time of taking inventory, unless such inventory is taken to confirm an otherwise indemnifiable incident hereunder.

i)  Damage to contractor's plant and equipment, or contractor's temporary building including contents, other than scaffolding provided by the Principal Insured other than that covered under the bare rental contractors equipment extension.

j)  Vehicles licensed for road use.

k)  The costs of normal upkeep and maintenance.

   l)  As from the time of the first introduction of hydrocarbons:

   –   Damage to catalyst, consumables, chemicals and feedstock other than where such is a result of Damage to the Insured Property.

   –   Damage to refractory linings or refractory brickwork as from the moment of the first application of heat, except when caused by indemnifiable Damage to the Insured Property (other than the refractory linings or refractory brickwork).

   –   Damage resulting from deliberate non-compliance with prescribed start-up and/or operating procedures in accordance with industry standards, as a result of a collective decision taken by the Principal Insured's senior on-site representative or of head office management, other than such as would in accordance with accepted engineering practice at the time of taking of the decision, or where such has resulted from an approved management of change request.

m)  In respect of piling works only: The cost of repair, replacement, or rectification of foundation piles and/or casings and/or sheet pile constructions which are:
   –   misplaced and/or positioned so that their alignment is outside of the specified design tolerances;
   –   Damaged during driving and/or extraction;
   –   the subject of individual or block disconnection or declutching.

   The cost of repair, replacement, or rectification of piling work necessitated by leakage or infiltration of fluids or material at seams, joints, connections and/or beneath sheet pile constructions or into casings, unless such leakage or infiltration is a direct consequence of other Damage for which indemnity is provided by this Section.

   The cost of any abandoned piling work, unless such abandonment is a direct consequence of other Damage for which indemnity is provided by this Section.

   The cost of any piles which have failed to pass a load test or to reach the required bearing load, unless such failure is a direct consequence of other Damage for which indemnity is provided by this Section.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## 6  Exclusions Continued...

n) Land and land values, (but not including costs of excavations and fills which form part of the Project), water both above and below the surface.

o) Damage to excavations due to the breakdown of a groundwater pumping system unless standby pumping facilities, equivalent to at least the capacity of the largest operating pump, are installed and ready for use prior to the commencement of the pumping operations.

p) In respect of Section AII) only Damage due to any faults or defects that the Principal Insured knew or ought to have known existed at the inception date of this Policy.

q) Damage resulting from directional drilling operations or other trenchless pipe installation

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007



# General Exclusions

The indemnity provided by this Policy shall not apply to or include any Damage to any property whatsoever, or any liability, loss or expenses whatsoever resulting or arising therefrom, of whatsoever nature directly or indirectly caused by or happening through:

## 1    Radiation:

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1    Ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2    the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3    any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4    the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

    1.5    any chemical, biological, bio-chemical, or electromagnetic weapon.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## 2    War:

- War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war
- mutiny, military rising, insurrection, rebellion, revolution, insurrection, military or usurped power, martial law or state of siege, confiscation, requisition, seizure or Damage to property by order of the government or by any public authority; or,

This clause also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to the above.

If the insurers allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this Policy the burden of proving the contrary shall be upon the Named Insured.

In the event any portion of this clause is found to be invalid or unenforceable, the remainder shall remain in force and effect.

## 3    Terrorism:

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this Policy an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the insurers allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this Insurance the burden of proving the contrary shall be upon the Named Insured.

In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO <u>MOTIVA</u> <u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## 4    Deliberate Acts:

Any Damage occurring due to the Gross Negligence of the Management of the Named Insured or any act or omission committed by the Management of the Named Insured with the intention of causing a loss hereunder unless such act or omission was in order to prevent further loss. Any act by any one Named Insured however shall not prejudice the right to indemnity of any other Named Insured who has not committed such an act.

## 5    Electronic Data:

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

a)  This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of Electronic Data from any cause whatsoever (including but not limited to Computer Virus) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

b)  However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils -- Fire, Explosion

Electronic Data Processing Media Valuation - Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:
Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the Electronic Data from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such Electronic Data. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such Electronic Data to the Named Insured or any other party, even if such Electronic Data cannot be recreated, gathered or assembled.

## 6    Mould Exclusion:

This policy does not insure Damage caused by mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism and wet or dry rot, whether directly or indirectly the result of a covered peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expense or business interruption. Such loss is excluded regardless of any other cause or event that continues concurrently or in any sequence to the loss. If loss otherwise covered by this policy occurs and the cost of removal of debris is increased due to the presence of mold, moss, fungi, bacteria infestation, wet or dry rot and extremes of humidity, this policy will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on or about the covered property to be removed.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## 7    Asbestos Exclusion:

This Policy does not insure Damage or any actual or alleged liability whatsoever for any claim or
claims in respect of loss or losses directly or indirectly arising out of, resulting from or in
consequence of asbestos, in whatever form or quantity.

## 8    Pollution and Contamination Exclusion:

This Insurance does not cover any liability for:

(1)  The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating
     substances unless the seepage, pollution or contamination is caused by a sudden,
     unintended and unexpected happening during the period of this Insurance.

(2)  Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have been
covered under this Insurance had this clause not been attached.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007



# General Conditions

## 1   Definitions:

### Policy
The term Policy shall include this policy's schedule, terms, conditions, and exclusions along with
any endorsements hereto which will form and shall be read together as one contract and any
word or expression to which a specific meaning has been attached in any part in this policy shall
bear that meaning wherever it shall appear.

### Damage
The term 'Damage' shall mean physical damage, physical loss or physical destruction.

### Occurrence and 72 Hours
The term 'any one Occurrence' shall be defined as an event or a continuous exposure to
conditions, which causes Damage. Any number of such Damages resulting from a common
cause, or from exposure to substantially the same conditions, shall be deemed to result from "any
one Occurrence".

With respect to Damage hereunder arising:-
  - from tornado and/or cyclone and/or hurricane and/or Windstorm and/or hail,
  - from flood and/or inundation
  - from earthquake
  - from a  riot and/or riot attending a strike and/or civil commotion
the term "any one Occurrence" shall mean the sum total of all Damage sustained during the one
period of Seventy-Two (72) consecutive hours commencing within the term of this Policy caused
by or resulting from the above mentioned cause.

As respects all of the foregoing, no one elected seventy-two (72) hour period shall overlap any
other elected seventy-two (72) hour period and the Principal, may elect the moment from which
any period of seventy-two (72) consecutive hours shall be deemed to have commenced, these
Insurer(s) being responsible only for their proportion of the loss to the Named Insured in respect
to the said elected period of seventy-two (72) hours.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## Loss

Where a limit is stated as being a percentage of Loss, Loss shall be deemed to mean the amount of the Damage itself, before any additional amounts for extensions of coverage have been taken into account.

## Hot Testing / Commissioning / Integration / Initial Operations

The period of 'hot testing / commissioning / integration / initial operations' shall be the time during which feedstock is present for processing purposes in the individual items.

## Site

The construction site(s) and such additional land adjoining it as provided for under the applicable contract.

## Electronic Data

Electronic Data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

## FLEXA Perils

FLEXA Perils shall mean the Fire, Lightning, Explosion and Aircraft Impact.

## Windstorm

An atmospheric disturbance marked by high winds, with or without precipitation, including such events as hurricane, typhoon, rainstorm, thunderstorm, hailstorm, tornado, or any combination of the foregoing events, including any resulting flood, tidal or wave action.

## Computer Virus

Computer Virus means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. Computer Virus includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

## Off Site

All areas within the Territorial limits other than the Site.

## VARTL (Value at Risk at Time of Loss)

The actual cumulative project expenditure of the Sum Insured at the time such a loss occurs. This shall be the amount calculated on a pro-rata basis from the value stated as the actual cumulative project expenditure to date in the monthly reports prior to the loss and following the loss.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## 2   Other Insurance:

In the event of any other valid and collectible insurance protecting the interests of the Named
Insured, as respects this Project, exists at the time of loss the insurance under this Policy shall be
considered primary and specific insurance, and such other valid and collectible insurance which
may exist shall not contribute to the payment of any loss until the amount of this Policy shall have
been exhausted as respects the interests of the Named Insured.

However this paragraph shall not apply, other than in accordance with the provisions of the 50/50
clause, to Damage covered by any applicable marine cargo policy. The above paragraph also
shall not apply where contractors / subcontractors are required under contract to provide their
own insurance policies. In the event that coverage is provided by any contractors policy(ies) this
Policy will only provide difference in conditions or excess coverage to that provided by the
contractors.

## 3   Cancellation:

This Policy may be cancelled at any time upon written request of the Principal, or it may be
cancelled by the Insurer(s) only for non-payment of premium in accordance with the premium
payment condition contained in the Schedule.

In event of cancellation of this Policy, the premium to be retained by Insurer(s) shall be the
appropriate earned premium, calculated at pro-rata.

## 4   Mediation/Arbitration:

### Mediation

If any dispute or difference of whatsoever nature arises out of or in connection with this Policy,
including any question regarding its existence, validity or termination, hereafter termed as Dispute,
the parties undertake that, prior to a reference to arbitration,  they will seek to have the Dispute
resolved amicably by mediation.

All rights of the parties in respect of the Dispute are and shall remain fully reserved and the entire
mediation including all documents produced or to which reference is made, discussions and oral
presentations shall be strictly confidential to the parties and shall be conducted on the same basis
as without prejudice negotiations, privileged, inadmissible, not subject to disclosure in any other
proceedings whatsoever and shall not constitute any waiver of privilege whether between the
parties or between either of them and a third party.

The mediation may be terminated should any party so wish by written notice to the appointed
mediator and to the other party to that effect. Notice to terminate may be served at any time after
the first meeting or discussion has taken place in the mediation.

If the Dispute has not been resolved to the satisfaction of either party within 90 days of service of
the notice initiating mediation, or if either party fails or refuses to participate in the mediation, or if
either party serves written notice terminating the mediation under this clause, then either party may
refer the Dispute to arbitration, in respect of quantum only.
Unless the parties otherwise agree, the fees and expenses of the mediator and all other costs of
the mediation shall be borne equally by the parties and each party shall bear their own respective
costs incurred in the mediation regardless of the outcome of the mediation.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## Arbitration

In case the Principal Insured and the Insurer(s) shall fail to agree as to the amount to be paid under this Policy through mediation as above, such dispute shall then be referred to arbitration under ARIAS Arbitration Rules. The Arbitration Tribunal shall consist of three arbitrators, one to be appointed by the Principal Insured, one to be appointed by the Insurer(s) and the third to be appointed by the two appointed arbitrators. The third member of the Tribunal shall be appointed as soon as practicable (and no later than 28 days) after the appointment of the two party-appointed arbitrators. The Tribunal shall be constituted upon the appointment of the third arbitrator.

The arbitrators shall be persons (including those who have retired) with not less than ten years' experience of insurance or reinsurance within the industry or as lawyers or other professional advisers serving the industry.

Where a party fails to appoint an arbitrator within 14 days of being called upon to do so or where the two party-appointed arbitrators fail to appoint a third within 28 days of their appointment, then upon application ARIAS (UK) will appoint an arbitrator to fill the vacancy. At any time prior to the appointment by ARIAS (UK) the party or arbitrators in default may make such appointment.

The Tribunal may at its sole discretion make such orders and directions as it considers to be necessary for the final determination of the matters in dispute. The tribunal shall have the widest discretion permitted under the law governing the arbitral procedure when making such orders or directions.

The seat of arbitration shall be London, England.

## 5   Permissions and Privileges:

Permission is granted to the Named Insured or any other party acting on behalf of the Named Insured to effect contracts or agreements customary or necessary for the execution of the Project and / or its operations. Under such contracts or agreements the Named Insured may assume liability or grant releases therefrom, without prejudice to this insurance.

This is, however, provided such contracts or agreements, oral or written, insofar as they affect any loss hereunder, are concluded prior to such loss, and the rights and obligations of the insurers shall be governed by the terms of such contracts or agreements, provided that such actions would be that of a prudent uninsured.

The Insurers shall be permitted but not obligated to inspect the Named Insured's property and operations. The Insurers shall also be permitted to investigate any accident notified to the Insurers or claim made against the Insured.

These above permissions shall not extend the coverage or limits of this insurance beyond the terms and conditions of this Policy.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

# 6   Claims Procedures:

In the event of any accident occurring, which might give rise to a claim under this Policy, or that would have been indemnifiable but for the application of a deductible, the Insured shall:

(a)   Immediately notify the Insurers by telephone or e-mail via the Loss Adjuster's address specified in the Schedule, giving an indication as to the nature and extent of the loss, damage or injury, and confirm such advice in writing as soon as possible;

(b)   supply all such information and documentary evidence in relation to the claim as the Insurers may require;

(c)   preserve damaged Insured Property and make it available for inspection by a representative of the Insurers

(d)   send to the Insurers, within 6 working days after receipt, any writ, summons or other proceedings which may be commenced against the Insured;

(e)   inform the police authorities promptly, or require the Project Security to inform and liaise with authorities, in the event of loss or damage by theft, burglary or any malicious persons(s) for the purpose of recovering any property so lost, discovering the guilty person or persons, and having him, her or them duly prosecuted;

(f)   give to the Insurers every assistance to enable the Insurers to settle or resist any claim against the Insured, or institute any proceedings;

(g)   advise the Insurers of any other insurance(s) which may cover the same loss, damage or injury, or any part thereof.

The Insured shall not negotiate, pay, settle, admit or repudiate any claim under the Policy without the written consent of the Insurers, nor shall the Insured be entitled to abandon any property to the Insurers.

If a claim is made and rejected and no action, suit or reference to arbitration is commenced by the Insured within six months after such rejection, then, for all purposes, the claim shall be regarded as having been abandoned and shall not be recoverable under this Policy.

However, it is clearly understood that failure to notify an Occurrence which, at the time of happening did not appear to involve this Policy but which, at a later date, gives rise to a claim hereunder, shall not prejudice the recovery of the claim by the Insured from the Insurer.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

# 7   Proof and Payment of Loss:

All adjusted claims shall be due and payable within 30 calendar days after the presentation and
acceptance of satisfactory proof of loss to the Insurer(s).

In the event of a loss occurrence which has been ascertained to be a valid claim under this
Policy, the Insurer(s) hereon agree, upon the submission of partial proof of loss, to advance to the
Principal Insured a mutually agreed upon amount of the estimated loss prior to the production of a
final proof of loss.

# 8   Multiple Insureds:

i)      It is noted and agreed that if the Named Insured described in the Schedule comprises more
than one insured party each operating as a separate and distinct entity then (save as
provided in this Multiple Insureds Clause) cover hereunder shall apply in the same manner
and to the same extent as if individual policies had been issued to each such insured party
provided that the total liability of the Insurers to all of the insured parties collectively shall not
exceed the limits of liability including any sub limits as stated in the Policy.

ii)     It is understood and agreed that any payment or payments by Insurers to any one or more
such insured parties shall reduce to the extent of that payment Insurers liability to all such
parties arising from any one event giving rise to a claim under this Policy and (if applicable) in
the aggregate.

iii)    It is further understood that the insured parties will at all times preserve the various
contractual rights and agreements entered into by the insured parties and the contractual
remedies of such parties in the event of loss or damage.

iv)     It is further understood and agreed that Insurers shall be entitled to avoid liability to or (as
may be appropriate) claim damages from any of the insured parties in circumstances of fraud,
material misrepresentation, material non-disclosure, breach of any warranty or condition,
each referred to in this clause as a Vitiating Act.

v)      It is however agreed that (save as provided in this Multiple Insured's Clause) a Vitiating Act
committed by one insured party shall not prejudice the right to indemnity of any other insured
party who has an insurable interest and who has not committed a Vitiating Act.

vi)     Insurers hereby agree to waive all rights of subrogation which they may have or acquire
against any insured party except where the rights of subrogation or recourse are acquired in
consequence or otherwise following a Vitiating Act in which circumstances Insurers may
enforce such rights notwithstanding the continuing or former status of the vitiating party as a
Named Insured.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## 9     Subrogation and Release Agreement:

In the event of any payment under this Policy, the Insurer(s) shall be subrogated to the extent of such payment, to all the Named Insured's right of recovery, however the Insurer(s) hereon shall not acquire any rights of recovery which the Named Insured has waived prior to loss nor shall such waiver affect the Named Insured's right of recovery under this Policy.

The waiver of subrogation shall not apply to vendors, suppliers and manufacturers to the extent that they are liable under the terms of any warranty or guarantee, or in respect of any additional insured of any claims made under a policy of professional indemnity.

The Named Insured shall execute all papers required and shall do everything that may be reasonably necessary to secure such rights of recovery. The Insurer(s) will act in concert with all other interested parties (including the Named Insured) in the exercise of rights of recovery.

The expense of all proceedings necessary to pursue such a right of recovery, and the amount recovered therefrom shall be apportioned between the interests concerned, including that of the Named Insured, in the ratio that the amount that each party has paid bears to the overall loss (including the deductible) for that particular Occurrence.

However should proceedings be instituted solely on the initiative of the Insurer(s) and the Named Insured does not wish to pursue its own losses, the expense thereof shall be borne by the Insurer(s) and the amount of the recovery shall first reimburse the amount paid by them.

## 10   Policy Voidable:

This policy shall be void as respects the interest of the Named Insured if the Named Insured has intentionally concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Named Insured touching any matter relating to this insurance or subject thereof, whether before or after a loss. Any act as described herein by one Named Insured shall not prejudice the interest of any other Named Insured.

## 11   Material Change:

The Principal Insured shall furnish progress reports on the Project in writing on a monthly basis in a timely fashion (but always within 60 days of the end of the period which it relates to).

These shall include a listing of significant change orders. The Insured will advise if in their belief there is a material change in risk, and if necessary the Insurer shall then propose a modification to the terms and conditions of the Policy.

The reports shall also include the actual cumulative project expenditure to date.

If the Named Insured and the Insurers are unable to agree as to if the change constitutes a material change in the risk or the reasonableness of the modification to the Policy the matter shall be dealt with in accordance with the provisions of the mediation/arbitration clause.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## 12   Access and Inspection:

Representatives of the Insurers shall, at any reasonable time as agreed with the Insured, have
the right to inspect and examine all or any part of the Property Insured or the Site in relation to the
performance of the Project. In addition, the representatives shall be provided by the Insured with
such information pertaining to the risks insured by this Policy as may be reasonably requested.

## 13   Disputes Clause:

Any dispute concerning the interpretation of the terms, conditions, limitations and exclusions
contained herein is understood and agreed by both the Insured and the Insurer(s) to be subject to
the law stated in the Schedule.

Any dispute shall be dealt with in the first instance by mediation.

Each party agrees to submit, except where the dispute relates to the amount to be paid under this
Policy only, to the exclusive jurisdiction of the courts stated in the Schedule and to comply with all
requirements to give such jurisdiction. For disputes relating solely to the amount to be paid under
this Policy such disputes shall be governed by terms of the arbitration clause.

### Service of Suit

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to
be due hereunder, the Underwriters hereon, at the request of the Insured, will submit to the
jurisdiction of a Court of competent jurisdiction within the State of Delaware, USA. Nothing in this
Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to
commence an action in any Court of competent jurisdiction in the United States, to remove an
action to a United States District Court, or to seek a transfer of a case to another Court as permitted
by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon :

LeBeouf, Lamb, Greene & McRae, L.L.P,

125 West 55 Street

New York 10019

Tel: 212-424-8011

Fax: 212-649-9368

and that in any suit instituted against any one of them upon this contract, Underwriters will abide
by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of
Underwriters in any such suit and/or upon the request of the Insured to give a written undertaking
to the Insured that they will enter a general appearance upon Underwriters' behalf in the event
such a suit shall be instituted.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## 14   Currency Clause:

All premiums and claims (if any) in respect of this Policy will be paid in United States Dollars.

## 15   50/50 Clause:

It is understood and agreed that, where it is not possible to establish whether the Damage was caused before or after arrival of the goods at the Job Site and/or store or place, the settlement will be made on a 50/50 basis between this Policy and the applicable marine cargo policy. In the event that the deductible under this Policy is different from the deductible under the applicable marine cargo policy, in settling the claim as above insurers shall apply 50% of their respective deductible.

However this is on the proviso that upon arrival of such property covered under a marine cargo policy at the Project Site, if there are any visible sign of Damage on such property which is packed or crated or any other indication that the property may have been Damaged, that it is unpacked immediately and further inspected and reported to their marine cargo insurers (if such cover is applicable and was provided).

## 16   Interpretation:

It is hereby agreed that the titles of the various clauses/paragraphs of this Policy and any endorsements thereto are included solely for convenience and shall not be deemed to limit or otherwise affect the provisions to which they relate in any way.

## 17   Notices:

All notices or other communications under or in connection with this policy will be given in writing or by fax. Any such notice will be deemed to be given as follows:
- if in writing, when delivered;
- if by fax or email, on the date on which it is transmitted but only if (i) immediately after the transmission, the sender's fax machine records the correct answerback or in the case of email no failure of delivery report is received (ii) the transmission date is a normal business day in the country of the recipient at the time of transmission and is recorded as received before 5pm on that date in the recipient's time zone, failing which it shall be deemed to be given on the next normal business day in the recipient's country.

The address and fax numbers of the Principal is as stated in the Schedule.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

# Appendix A - Hot Testing / Commissioning / Integration and Initial Operations Schedule

Hot testing / commissioning / integration and initial operations periods:



MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

# Appendix B - Listing of Fabrication Sites

Modular fabrication yards being:

- Jacobs Engineering, Charleston, SC
- Kiewitt Offshore, Ingleside, TX
- Cimbro, ME
- Pipe rack module locations within Mexico to be agreed

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## ENDORSEMENT No. 001

| | |
|---|---|
| INSURED: | Motiva Enterprises, LLC |
| POLICY NO.: | MHOU07150 |
| POLICY TERM: | 1st September 2007 to 1st July 2010 |
| EFFECTIVE DATE OF ENDORSEMENT: | 1st September 2007 |

1) For sake of clarity it is hereby noted and agreed that with effect from inception coverage hereunder includes damage to temporary leased buildings and temporary site construction facilities.  The contract value of such has been included in the estimated contract value.

2) In respect of the aforementioned Section A6 of the Policy wording "Exclusions applicable to the section" "(i)" is amended to read;

Damage to contractor's plant and equipment or contractors temporary buildings including contents, other than temporary leased buildings/site construction facilities and scaffolding provided or leased by the Principal Insured and that covered under the bare rental contractors equipment extension.

INFORMATION:

Attached is an e-mail from Marsh Houston to Marsh London dated 12th September 2007, 9:46 CST, 3 pages plus attachment (6 pages total).

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market/Carrier | Line Size/Participation | Assigned Policy Number |
|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 70080 (MW001707) |
| Liberty Mutual Insurance Company | USD 75,000,000, that being 10.00% of USD 750,000,000 | 3H588077001 |
| Zurich American Insurance Company | USD 56,250,000, that being 7.50% of USD 750,000,000 | IM9002127-00 |
| AIG Casualty Company | USD 37,500,000, that being 5.00% of USD 750,000,000 | 261-21-50 |
| ACE American Insurance Company through Starr Tech | USD 30,000,000, that being 4.00% of USD 750,000,000 | CTFN04286091 |
| General Security Indemnity Company of Arizona (SCOR) | USD 30,000,000, that being 4.00% of USD 750,000,000 | 2007 10F130911-1 |
| Arch Insurance Company | USD 18,750,000, that being 2.50% of USD 750,000,000 | CAR0023080-00 |
| Lancashire Insurance Company Limited | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Navigators Special Risks, Inc. | USD 7,500,000, that being 1.00% of USD 750,000,000 | 07 NSRO 1140-01 |
| * Stellar (Saudi Aramco Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | TBD |
| * Noble (Shell Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 350-1-MOTCAR157 |

* Captive Participation not placed through Marsh.

MARSH

Melissa B. Henderson

Date Printed: 12/20/2007



Karen M
Crespin/HOU-TX/US/Marsh/
MMC
09/12/2007 09:46 AM

To   Adam Chapman/LON/GB/Marsh/MMC@MMC

cc   Karen M
Hornberger/HOU-TX/US/Marsh/MMC@MMC,
Paul T

bcc

Subject   Fw: Temporary Leased Buildings

AC-
Any chance of getting this exclusion removed?
Kc

Karen M. Crespin, CPCU
Marsh Marine & Energy
1000 Main Ste 3000, Houston, Tx 77002
(713) 276-8580 Phone
(713) 276-8565 Fax
----- Forwarded by Karen M Crespin/HOU-TX/US/Marsh/MMC on 09/12/2007 09:45 AM -----

<Anthony.Dupuy@shell.com
>
09/11/2007 03:00 PM

To   Karen M
Crespin/HOU-TX/US/Marsh/MMC@MMC

cc   Karen M
Hornberger/HOU-TX/US/Marsh/MMC@MMC,
Paul T
Nicholson/HOU-TX/US/Marsh/MMC@MMC,
<John.Barry@shell.com>,
<chris.woodward@shell.com>,
<skip.neilson@shell.com>

Subject   FW: Temporary Leased Buildings

Karen,

Further to our telephone conversation a short time ago, I received a call from one of the project guys inquiring about insuring temporary buildings, trailers and such. The contracts will be written such that either the JV (via subcontract) or Motiva (via purchase order) will be responsible for insuring these temporary structures. If the JV, they would insure these and then pass the costs through to Motiva.

The two spreadsheets that are attached below depict the value of of these temporary buildings, trailers and such in terms of Estimated Total Lease Cost (Exhibit C; $4.92 million) and Purchase Value of Leased Buildings (Exhibit F; $6.97 million).

Please review and advise. Off the top of my head, would think we would want these temporary buildings, trailers and such covered under the CAR policy. This may already be the case looking at the Insuring agreement in Section A 1 Insured Property (cited below). Further, I am advised by the project guys that the value of the temporary buildings, trailers and such were included in the estimated insurable value declared / intended to be included in the final insurable value and were not pulled out as a non-recurring cost.

Lastly, I call your attention to the exclusions shown in Section 6, specifically "i," that speaks to excluding damage to contractor's plant and equipment. Provided there's coverage under Section A 1 Insured Property, we need to make sure coverage is not taken away by this exclusion. If Motiva goes the route of the purchase order, my understanding is that the JV would lease the temporary buildings, trailers and such

*Page 1 of 3*

Melissa B. Henderson

Date Printed: 12/20/2007

as agent of Motiva. The contract would be as between Motiva and the owner or lessor of the temporary buildings, trailers and such versus as between Motiva and the JV. The JV is typically referred to as Contractor and the JV is at whom the exclusion cited below appears directed to. Nonetheless, would appreciate your review of this matter as well to ensure that this exclusion isn't exercised at some later point in time to limit or preclude coverage for temporary buildings, trailers and such, especially if it was the intention all along to have these covered by the CAR policy.

# Section A : Construction All Risks

## 1   Insured Property:

i)   All materials, equipment, supplies, machinery and all other property of the Project including temporary works / structures; including spare parts, common facilities and facilities which are improvements, tie-ins, connections and additions / modifications to existing facilities, pipelines and all other property collectively known as the Project, to the extent that the value thereof is included in the estimated insurable value declared / intended to be included in the final insurable value.

## 6   Exclusions applicable to this Section

This Policy does NOT insure the following:

I)   Damage to contractor's plant and equipment, or contractor's temporary building including contents, other than scaffolding provided by the Principal Insured.

Let me know what you think.

Regards,

Tony

Anthony T. Dupuy, Jr., S.C.L.A.
Downstream Risk & Insurance Advisor
Central Finance
Shell Oil Company
One Shell Plaza
PO Box 2463, Houston, TX 77252-2463

Tel: +1 713 241 0148
Fax: +1 713 241 6164
Mobile: +1 281 541 2092
Email: anthony.dupuy@shell.com
Internet: http://www.shell.com

-----Original Message-----

Melissa B. Henderson

Date Printed: 12/20/2007

**From:** Stokes, Michael W MOTIVA-DVM/3232
**Sent:** Tuesday, September 11, 2007 1:36 PM
**To:** Dupuy, Anthony T SHLOIL-FTI
**Subject:** FW: Temporary Leased Buildings

Tony, probably more than they need but it was readily available.  If they have any question please feel free to call Mr. Mathew below.

Thanks.
-----Original Message-----
**From:** Mathew, Kurlakose [mailto:kmathew@Bechtel.com]
**Sent:** Tuesday, September 11, 2007 1:31 PM
**To:** Stokes, Michael W MOTIVA-DVM/3232
**Subject:** Temporary Leased Buildings

Mike,

Please find attached the requested data on temporary buildings.

Exhibit C has the projected durations.
Exhibit F has their purchase values.

Please let me know, if you require any additional information.

Thank you for the assistance.

Regards

**Kurlakose Mathew**
**Sr. Sub Contract Specialist**
**Motiva Port Arthur Refinery CEP**
**Bechtel Jacobs JV - Houston**
**Tel: 713-235-3528**
*e-mail:*  kmathew@bechtel.com



Exhibit C.xls  Exhibit F.xls

**All Recipients**
**To:**    Karen M Crespin/HOU-TX/US/Marsh/MMC@MMC
**cc:**    Karen M Hornberger/HOU-TX/US/Marsh/MMC@MMC, Paul T Nicholson/HOU-TX/US/Marsh/MMC@MMC,
          <John.Barry@shell.com>, <chris.woodward@shell.com>, <skip.neilson@shell.com>
**From:**  <Anthony.Dupuy@shell.com>

**All Recipients**
**To:**    Adam Chapman/LON/GB/Marsh/MMC@MMC
**cc:**    Karen M Hornberger/HOU-TX/US/Marsh/MMC@MMC, Paul T Nicholson/HOU-TX/US/Marsh/MMC@MMC,
          Melissa B Henderson/HOU-TX/US/Marsh/MMC@MMC
**From:**  Karen M Crespin/HOU-TX/US/Marsh/MMC

## MOTIVA CRUDE EXPANSION PROJECT
### Exhibit C - Schedule of Lease Rates - Temporary Site Construction Facilities

26282-400-HC1-AK8P-00079

**SUBCONTRACT DESCRIPTION**

Temporary Facilities - Buildings (Lease)

| Item No. A-1 | Payment Milestone | Sqft. | Type | Qty. | Lease (Months) | Lease Cost per Month for 24 Months (USD) | Lease Cost per Month after 24 Months (USD) | Estimated Total Lease Cost (USD) |
|---|---|---|---|---|---|---|---|---|
| 2.0 | SITE CONSTRUCTION FACILITIES | | | | | | | |
| 2.1 | SITE MAIN OFFICE, One Story, 3-22Units | | | | | | | 461,540.00 |
| 2.1.1.1 | Leasing Cost | | EA | 1 | 37 | 12,910.00 | 10,900.00 | 38,380.80 |
| 2.1.1.2 | Taxes as per GC 9.2 | | | 1 | 37 | | | 499,920.80 |
| 2.1.1.3 | SITE MAIN OFFICE -1 | 16,720 | | 1 | | | | 429,740.00 |
| 2.1.2.1 | Leasing Cost | | EA | 1 | 35 | 12,910.00 | 10,900.00 | 36,527.00 |
| 2.1.2.2 | Taxes as per GC 9.2 | | | 1 | 35 | | | 466,267.00 |
| 2.1.2.3 | SITE MAIN OFFICE -2 | 16,720 | | 1 | | | | 331,640.00 |
| 2.1.3.1 | Leasing Cost | | EA | 1 | 26 | 12,910.00 | 10,900.00 | 28,189.40 |
| 2.1.3.2 | Taxes as per GC 9.2 | | | 1 | 26 | | | 359,829.40 |
| 2.1.3.3 | SITE MAIN OFFICE -3 | 16,720 | | 1 | 20 | | | |
| 2.2 | EAST OF DCU-2 , 22-UNIT AREA OFFICE | | EA | 1 | 33 | 12,910.00 | 10,900.00 | 407,940.00 |
| 2.2.1 | Leasing Cost | | | 1 | | | | 34,674.90 |
| 2.2.2 | Taxes as per GC 9.2 | | | 1 | 33 | | | 442,614.90 |
| 2.2.3 | EAST OF DCU-2, 22-UNIT AREA  OFFICE | 16,720 | | 1 | 33 | | | |
| 2.3 | WEST OF PS-4, 22-UNIT AREA OFFICE | | EA | 1 | 24 | 12,910.00 | 10,900.00 | 309,840.00 |
| 2.3.1 | Leasing Cost | | | 1 | | | | 26,339.40 |
| 2.3.2 | Taxes as per GC 9.2 | | | 1 | 24 | | | 336,176.40 |
| 2.3.3 | WEST OF PS-4, 22-UNIT AREA OFFICE | 16,720 | | 1 | 24 | | | |
| 2.4 | SOUTH OF SULFUR, 6-UNIT AREA OFFICE | | EA | 1 | 33 | 2,490.00 | 2,375.00 | 81,135.00 |
| 2.4.1 | Leasing Cost | | | 1 | | | | 6,896.48 |
| 2.4.2 | Taxes as per GC 9.2 | | | 1 | 33 | | | 88,031.48 |
| 2.4.3 | SOUTH OF SULFUR, 6-UNIT AREA OFFICE | 3,600 | | 1 | 33 | | | |
| 2.5 | SOUTHEAST OSBL, 6-UNIT AREA OFFICE | | EA | 1 | 30 | 2,490.00 | 2,375.00 | 74,010.00 |
| 2.5.1 | Leasing Cost | | | 1 | | | | 6,290.95 |
| 2.5.2 | Taxes as per GC 9.2 | | | 1 | 30 | | | 80,300.85 |
| 2.5.3 | SOUTHEAST OSBL, 6-UNIT AREA OFFICE | 3,600 | | 1 | 30 | | | |
| 2.6 | NORTH OF GAS PLANT, 6-UNIT AREA OFFICE | | EA | 1 | 20 | 2,490.00 | 2,375.00 | 71,035.00 |
| 2.6.1 | Leasing Cost | | | 1 | | | | 6,088.98 |
| 2.6.6 | Taxes as per GC 9.2 | | | 1 | 20 | | | 77,723.08 |
| 2.6.7 | NORTH OF GAS PLANT, 6-UNIT AREA OFFICE | 3,600 | | 1 | 20 | | | |
| 2.8 | MAIN SECURITY OFFICE | | EA | 1 | 32 | 630.00 | 600.00 | 19,920.00 |
| 2.8.1 | Leasing Cost | | | 1 | | | | 1,693.20 |
| 2.8.6 | Taxes as per GC 9.2 | | | 1 | 32 | | | 21,613.20 |
| 2.8.7 | MAIN SECURITY OFFICE | 720 | | 1 | 32 | | | |
| 2.9 | SATELLITE SECURITY OFFICE | | EA | 4 | 32 | 416.00 | 363.00 | 52,096.00 |
| 2.9.1 | Leasing Cost | | | 4 | | | | 4,428.16 |
| 2.9.6 | Taxes as per GC 9.2 | | | 4 | 32 | | | 56,524.16 |
| 2.9.7 | SATELLITE SECURITY OFFICE | 1,440 | | 4 | 32 | | | |
| 2.10 | GF/FM OFFICE ( 12FT x 60FT) skid mounted, single-wide | | | | | | | |
| 2.10.1 | Leasing Cost | | EA | 16 | 30 | 535.00 | 510.00 | 238,600.00 |
| 2.10.6 | Taxes as per GC 9.2 | | | 16 | | | | 20,272.50 |
| 2.10.7 | GF/FM OFFICE ( 12FT x 60FT) skid mounted, single wide | 7,200 | | 16 | 30 | | | 258,772.50 |
| 2.11 | GF/FM OFFICE ( 24FT x 60FT) double wide | | EA | 10 | 30 | 957.00 | 913.00 | 284,460.00 |
| 2.11.1 | Leasing Cost | | | 10 | | | | 24,179.10 |
| 2.11.6 | Taxes as per GC 9.2 | | | 10 | 30 | | | 308,639.10 |
| 2.11.7 | GF/FM OFFICE ( 24FT x 60FT) double wide | 28,800 | | 16 | | | | |
| 2.17 | 44-PERSON LUNCH ROOM | | EA | 16 | 27 | 623.00 | 596.00 | 266,400.00 |
| 2.17.1 | Leasing Cost | | | 16 | | | | 22,644.00 |
| 2.17.6 | Taxes as per GC 9.2 | | | 16 | 27 | | | 289,044.00 |
| 2.17.7 | 44-PERSON LUNCH ROOMS | 11,520 | | 16 | 27 | | | |
| 2.18 | WASHROOM ( 24' X 40') M/F | | EA | 9 | 31 | 2,832.00 | 2,125.00 | 745,587.00 |
| 2.18.1 | Leasing Cost | | | 9 | | | | 63,374.90 |
| 2.18.6 | Taxes as per GC 9.2 | | | 9 | 31 | | | 808,961.90 |
| 2.18.7 | WASHROOM ( 24' X 40') M/F | 8,640 | | 9 | 31 | | | |
| 2.19 | WASHROOM ( 12' X 40') M/F | | EA | 2 | 31 | 1,468.00 | 1,118.00 | 87,048.00 |
| 2.19.1 | Leasing Cost | | | 2 | | | | 7,399.08 |
| 2.19.6 | Taxes as per GC 9.2 | | | 2 | 31 | | | 94,447.08 |
| 2.19.7 | WASHROOM ( 12' X 40') M/F | 960 | | 2 | 31 | | | |
| 2.20 | WASHROOM ( 12' X 40') Male | | EA | 2 | 31 | 1,424.00 | 1,087.00 | 83,200.00 |
| 2.20.1 | Leasing Cost | | | 2 | | | | 7,079.65 |
| 2.20.6 | Taxes as per GC 9.2 | | | 2 | 31 | | | 90,369.65 |
| 2.20.7 | WASHROOM ( 12' X 40') MALE | 960 | | 2 | 31 | | | |

### MOTIVA CRUDE EXPANSION PROJECT
### Exhibit C - Schedule of Lease Rates - Temporary Site Construction Facilities

| SUBCONTRACT | | | | | | | |
|---|---|---|---|---|---|---|---|
| **DESCRIPTION** | | | 26282-400-HC1-AKBP-00079 | | | | |
| | | | Temporary Facilities / Buildings (Lease) | | | | |
| Item No. A-1 | Payment Milestone | Sqft. | Type | Qty. | Lease (Months) | Lease Cost per Month for 24 Months (USD) | Lease Cost per Month after 24 Months (USD) | Estimated Total Lease Cost (USD) |

| Item No. A-1 | Payment Milestone | Sqft. | Type | Qty. | Lease (Months) | Lease Cost per Month for 24 Months (USD) | Lease Cost per Month after 24 Months (USD) | Estimated Total Lease Cost (USD) |
|---|---|---|---|---|---|---|---|---|
| 2.21 | WASH ROOMS (12' X 26') M/F | | | | | | | |
| 2.21.1 | Leasing Cost | | EA | 7 | 31 | 1,002.00 | 751.00 | 205,135.00 |
| 2.21.6 | Taxes as per GC 9.2 | | | 7 | | | | 17,436.48 |
| 2.21.7 | WASH ROOMS (12' X 26') M/F | 2,184 | | 7 | 31 | | | 222,571.48 |
| 2.22 | WASH ROOMS ( 12' X 14') | | | | | | | |
| 2.22.1 | Leasing Cost | | EA | 15 | 31 | 630.00 | 472.00 | 276,360.00 |
| 2.22.6 | Taxes as per GC 9.2 | | | 15 | | | | 23,490.60 |
| 2.22.7 | WASH ROOMS ( 12' X 14') | 2,520 | | 15 | 31 | | | 299,850.60 |
| 2.23 | TRAINING FACILITY | | | | | | | |
| 2.23.1 | Leasing Cost | | EA | 1 | 31 | 986.00 | 924.00 | 29,700.00 |
| 2.23.6 | Taxes as per GC 9.2 | | | 1 | | | | 2,524.50 |
| 2.23.6 | WASH ROOMS ( 12' X 14') | 1,440 | | 1 | 31 | | | 32,224.50 |
| 2.24 | MEDICAL FACILITY | | | | | | | |
| 2.24.1 | Leasing Cost | | EA | 1 | 31 | 1,907.00 | 1,820.00 | 58,508.00 |
| 2.24.6 | Taxes as per GC 9.2 | | | 1 | | | | 4,973.18 |
| 2.24.6 | MEDICAL FACILITY | 2,304 | | 1 | 31 | | | 63,481.18 |
| 2.26 | MEDICAL STORAGE BUILDING | | | | | | | |
| 2.26.1 | Leasing Cost | | EA | 1 | 31 | 308.00 | 294.00 | 9,450.00 |
| 2.26.6 | Taxes as per GC 9.2 | | | 1 | | | | 803.25 |
| 2.26.7 | MEDICAL STORAGE BUILDING | 288 | | 1 | 31 | | | 10,253.25 |
| 2.27 | SATELLITE FIRST AID FACILITY | | | | | | | |
| 2.27.1 | Leasing Cost | | EA | 2 | 31 | 363.00 | 345.00 | 22,254.00 |
| 2.27.6 | Taxes as per GC 9.2 | | | 2 | | | | 1,891.59 |
| 2.27.7 | SATELLITE FIRST AID FACILITY | 672 | | 2 | 31 | | | 24,145.59 |
| | *Grand Total* | | | | | | | 4,921,763.98 |

Exhibit F
Purchase Value of Leased Buildings

| Item No. | Building Description | Type | Floors | Unit Qty | Unit footprint ( W x L ft.) | Ft for skirt | Purchase Price (USD) | | Estimated Total price of the buildings (USD) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Site main office 22 units | One story modular building | 22 | 3 | 120 | 131 | 502 | 626,400 | Ea. | $1,879,200.00 |
| 2 | East of DCU2 22 unit area office | One story modular building | 22 | 1 | 120 | 131 | 502 | 599,000 | Ea. | $599,000.00 |
| 3 | West of PS4 22 unit area office | One story modular building | 22 | 1 | 120 | 131 | 502 | 599,000 | Ea. | $599,000.00 |
| 4 | South of Sulfur 5 unit area office | One story modular building | 5 | 1 | 60 | 60 | 240 | 124,000 | Ea. | $124,000.00 |
| 5 | North of gas plant 5 unit area office | One story modular building | 5 | 1 | 60 | 60 | 240 | 124,000 | Ea. | $124,000.00 |
| 6 | SE OSBL 5 unit office | One story modular building | 5 | 1 | 60 | 60 | 240 | 124,000 | Ea. | $124,000.00 |
| 7 | Warehouse 2 unit office | Modular | 2 | 1 | 24 | 60 | 168 | 43,700 | Ea. | $43,700.00 |
| 8 | Main security office | Modular | 1 | 1 | 12 | 60 | 144 | 32,650 | Ea. | $32,650.00 |
| 9 | Satellite security office | Modular | 1 | 4 | 12 | 30 | 84 | 21,075 | Ea. | $84,300.00 |
| 10 | GF/FM office single wide | Modular | 1 | 10 | 12 | 60 | 144 | 27,658 | Ea. | $276,580.00 |
| 11 | GF/FM office double wide | Modular | 2 | 20 | 24 | 60 | 168 | 50,337 | Ea. | $1,006,740.00 |
| 17 | Lunch room (44) | Modular | 1 | 16 | 12 | 60 | 144 | 31,500 | Ea. | $504,000.00 |
| 18 | Washroom M/F | Modular | 2 | 9 | 24 | 40 | 128 | 81,580 | Ea. | $734,220.00 |
| 19 | Washroom M/F | Modular | 1 | 2 | 12 | 40 | 104 | 42,900 | Ea. | $85,800.00 |
| 20 | Washroom M | Modular | 1 | 2 | 12 | 40 | 104 | 40,985 | Ea. | $81,970.00 |
| 21 | Washroom M/F | Modular | 1 | 7 | 12 | 28 | 76 | 28,975 | Ea. | $202,825.00 |
| 22 | Satellite washroom | Modular | 1 | 15 | 12 | 14 | 52 | 17,560 | Ea. | $263,400.00 |
| 23 | Training facility | Modular | 2 | 1 | 24 | 60 | 168 | 50,920 | Ea. | $50,920.00 |
| 24 | Medical Facility | Modular | 3 | 1 | 36 | 64 | 200 | 99,306 | Ea. | $99,306.00 |
| 26 | Medical storage | Modular | 1 | 1 | 12 | 24 | 72 | 15,550 | Ea. | $15,550.00 |
| 27 | Satellite first aid facility | Modular | 1 | 2 | 12 | 28 | 80 | 20,122 | Ea. | $40,244.00 |
| | Total | | | | | | | | $6,971,405.00 |

Note:

25282-400-HC1-AKBP-00079

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## ENDORSEMENT No. 002

| | |
|---|---|
| **INSURED:** | Motiva Enterprises, LLC |
| **POLICY NO.:** | MHOU07150 |
| **POLICY TERM:** | 1st September 2007 to 1st July 2010 |
| **EFFECTIVE DATE OF ENDORSEMENT:** | 1st September 2007 |

## BLANK ENDORSEMENT

No changes to above referenced policy, endorsement issued to correct numbering.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market / Carrier | Line Size / Participation | Assigned Policy Number |
|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 70080 (MW001707) |
| Liberty Mutual Insurance Company | USD 75,000,000, that being 10.00% of USD 750,000,000 | 3H588077001 |
| Zurich American Insurance Company | USD 56,250,000, that being 7.50% of USD 750,000,000 | IM9002127-00 |
| AIG Casualty Company | USD 37,500,000, that being 5.00% of USD 750,000,000 | 261-21-50 |
| ACE American Insurance Company through Starr Tech | USD 30,000,000, that being 4.00% of USD 750,000,000 | CTFN04286091 |
| General Security Indemnity Company of Arizona (SCOR) | USD 30,000,000, that being 4.00% of USD 750,000,000 | 2007 10F130911-1 |
| Arch Insurance Company | USD 18,750,000, that being 2.50% of USD 750,000,000 | CAR0023080-00 |
| Lancashire Insurance Company Limited | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Navigators Special Risks, Inc. | USD 7,500,000, that being 1.00% of USD 750,000,000 | 07 NSRO 1140-01 |
| * Stellar (Saudi Aramco Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | TBD |
| * Noble (Shell Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 350-1-MOTCAR157 |

*\* Captive Participation not placed through Marsh.*

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ˢᵗ SEPTEMBER 2007

## ENDORSEMENT No. 003

| | |
|---|---|
| **INSURED:** | Motiva Enterprises, LLC |
| **POLICY NO.:** | MHOU07150 |
| **POLICY TERM:** | 1ˢᵗ September 2007 to 1ˢᵗ July 2010 |
| **EFFECTIVE DATE OF ENDORSEMENT:** | 1ˢᵗ September 2007 |

It is hereby noted and agreed with effect from inception this Policy is amended as
follows;

## 5  Sums Insured (100%):

### Section A – Extensions of Coverage

| | |
|---|---|
| • Debris Removal: | 10% of Loss, maximum of USD 20,000,000 any one Occurrence. |
| • Expediting Expenses: | 20 % of the Loss, a maximum of USD 15,000,000 with an inner limit of USD  5,000,000 for airfreight, any one Occurrence. |
| • Public Authorities: | USD  1,000,000 any one Occurrence. |
| • Professional Fees: | USD  2,500,000 any one Occurrence. |
| • Preventative Measures: | USD  5,000,000 any one Occurrence. |
| • Plans and Documents: | USD  1,000,000 any one Occurrence. |
| • Leak Search Costs: | USD  1,000,000 per any one Occurrence and in the aggregate. |
| • Product in Storage: | USD 10,000,000 any one Occurrence and in the aggregate. |

## 6  Excesses (100%):

The first amount of the Named Insured's loss shall be borne by the Named Insured as
follows:

- USD 10,000,000 any one Occurrence in respect of all losses, except
- 3% VARTL (Value at Risk at Time of Loss) subject to a minimum of USD 10,000,000 and a maximum of **USD 20,000,000** in respect of Windstorm and flood.

## MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO <u>MOTIVA</u> <u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## Section A: Construction All Risks

### 2   Coverage:
### Subsection I) Unamended except;

l)  whilst at the site of the Project or the fabrication sites listed in Appendix B,

### 4   Extensions to this section: Unamended except;

k)  Bare Rental Contractors Equipment is deleted hereon.

### 6   Exclusions applicable to this section: Unamended except;

l)  Damage to contractor's plant and equipment or contractors temporary buildings including contents, other than temporary leased buildings/site construction facilities and scaffolding provided or leased by the Principal Insured.

## General Conditions

### 6   Claims Procedures: Unamended except;

a)  as soon as practicably possible, but always within 30 days notify the Insurers by telephone or e-mail via the Loss Adjuster's address specified in the Schedule, giving an indication as to the nature and extent of the loss, damage, or injury, and confirm such advice in writing as soon as possible;

All other terms clauses and conditions remaining unaltered.

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## ENDORSEMENT No. 004

| | |
|---|---|
| **INSURED:** | Motiva Enterprises, LLC |
| **POLICY NO.:** | MHOU07160 |
| **POLICY TERM:** | 1st September 2007 to 1st July 2010 |
| **EFFECTIVE DATE OF ENDORSEMENT:** | 17th January 2009 |

## DEFINITION OF SITE – LOGISTICS CENTER INCLUDED

Insurers hereon note and agree that the location known as the Logistics Center (being former K-Mart store about 3 miles from the site) is included under the definition of site.

MOTIVA - PORT ARTHUR REFINERY CRUDE EXPANSION PROJECT
Endorsement - K-Mart/Logistics Center Included in Definition of "Site"
CAR Coverage Effective 1st September 2007
Notes on individual market agreements:

| Market | Line Size | Agreed Terms |
|---|---|---|
| Swiss Re | 20.00% | Logistics Center included in definition of site with no limitation. |
| Liberty | 10.00% | Logistics Center included in definition of site with no limitation. |
| Zurich | 7.50% | Logistics Center included in definition of site with no limitation. |
| AIG | 5.00% | Logistics Center included in definition of site with no limitation. |
| Starr Tech (was 5.00%) | 4.00% | Logistics Center included in definition of site with Sub-Limit of $100,000,000. |
| Arch | 2.50% | Logistics Center included in definition of site with no limitation. |
| Navigators (was 1.50%) | 1.00% | Logistics Center included in definition of site with no limitation. |
| SCOR | 4.00% | Logistics Center included in definition of site with no Sub-Limit of $94,000,000. |
| Lancashire (was 7.50%) | 2.00% | Logistics Center included in definition of site with no limitation. |
| O'Farrell | 2.00% | Logistics Center included in definition of site with no limitation. |
| Catlin | 2.00% | Logistics Center included in definition of site with no limitation. |

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market / Carrier | Line Size / Participation | Assigned Policy Number |
|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 70080 (MW001707) |
| Liberty Mutual Insurance Company | USD 75,000,000, that being 10.00% of USD 750,000,000 | 3H588077001 |
| Zurich American Insurance Company | USD 56,250,000, that being 7.50% of USD 750,000,000 | IM9002127-00 |
| AIG Casualty Company | USD 37,500,000, that being 5.00% of USD 750,000,000 | 261-21-50 |
| ACE American Insurance Company through Starr Tech | USD 30,000,000, that being 4.00% of USD 750,000,000 | CTFN04286091 |
| General Security Indemnity Company of Arizona (SCOR) | USD 30,000,000, that being 4.00% of USD 750,000,000 | 2007 10F130911-1 |
| Arch Insurance Company | USD 18,750,000, that being 2.50% of USD 750,000,000 | CAR0023080-00 |
| Lancashire Insurance Company Limited | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 15,000,000, that being 2.00% of USD 750,000,000 | MW001707 |
| Navigators Special Risks, Inc. | USD 7,500,000, that being 1.00% of USD 750,000,000 | 07 NSRO 1140-01 |
| * Stellar (Saudi Aramco Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | TBD |
| * Noble (Shell Captive) | USD 150,000,000, that being 20.00% of USD 750,000,000 | 350-1-MOTCAR157 |

*Captive Participation not placed through Marsh.*

MARSH

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1st SEPTEMBER 2007

## <u>ENDORSEMENT No. 005</u>

| | |
|---|---|
| **INSURED:** | Motiva Enterprises, LLC |
| **POLICY NO.:** | MHOU07150 |
| **POLICY TERM:** | 1st September 2007 to 1st April 2012 |
| **EFFECTIVE DATE OF ENDORSEMENT:** | 00.01 am on 1st July 2009 local standard time at project site. |
| **TYPE:** | ERECTION ALL RISKS, DAMAGE TO EXISTING PROPERTY INSURANCE |

## <u>COVERAGE EXTENSION</u>

Insurers hereon note and agree that:

1) the Period of Insurance is extended until 00.01am on 1st April 2012 including hot testing / commissioning / integrating / and initial operations.

2) With effect from 00.01 am on the 1st July 2009, the excess in respect of Windstorm and flood shall be amended to **USD 20,000,000** any one Occurrence.

3) The Section A i) sum insured is increased to **USD 850,000,000** arising out of any one Occurrence, excess of the Policy excesses.

4) The Estimated Insurable Value is amended to **USD 6,507,042,000.**

The additional deposit premium in respect of the above shall be **USD 17,699,464 (100%).** This shall be payable in one installments due 1st January 2010.

5) The adjustment rate is amended to **6.1458** per mille.

6) A further extension of up to 2 months in the erection period only, is pre-agreed at a rate of 0.75 times pro-rata. If such is required, then it is to be addressed via subsequent endorsement.

7) An amount of **USD 80,000 (100%)** in respect of additional engineering fees, based on a further 2 visits being required shall be deducted from the first installment of premium and be paid to Swiss Re International SE (SRI).

All other terms and conditions remain unchanged.

Information:    Motiva Presentation to Underwriters

## MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market / Carrier | Line Size / Participation | Assigned Policy Number | Sig/Stamp |
|---|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 70080 ( B0509MW001707) | |
| Liberty Mutual Insurance Company | USD 85,000,000, that being 10.00% of USD 850,000,000 | 3H588077001 | |
| Zurich American Insurance Company | USD 63,750,000, that being 7.50% of USD 850,000,000 | IM9002127-00 | |
| AIG Casualty Company | USD 42,500,000, that being 5.00% of USD 850,000,000 | 261-21-50 | |
| ACE American Insurance Company through Starr Tech | USD 34,000,000, that being 4.00% of USD 850,000,000 | CTFN04286091 | |
| General Security Indemnity Company of Arizona (SCOR) | USD 34,000,000, that being 4.00% of USD 850,000,000 | 2007 10F130911-1 | |
| Arch Insurance Company | USD 21,250,000, that being 2.50% of USD 850,000,000 | CAR0023080-00 | |
| Lancashire Insurance Company Limited | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Navigators Special Risks, Inc. | USD 8,500,000, that being 1.00% of USD 850,000,000 | 07 NSRO 1140-01 | |
| * Stellar (Saudi Aramco Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | TBD | |
| * Noble (Shell Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 350-1-MOTCAR157 | |

*Captive Participation not placed through Marsh.*

## MARSH
MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## ENDORSEMENT <u>No. 006</u>

**INSURED:** Motiva Enterprises, LLC

**POLICY NO.:** MHOU07150

**POLICY TERM:** 1st September 2007 to 31st March 2012

**EFFECTIVE DATE**
**OF ENDORSEMENT:** 00.01 am on 1st June 2009 local standard time at project
site.

**TYPE:** ERECTION ALL RISKS, DAMAGE TO EXISTING
PROPERTY INSURANCE

## LAYDOWN YARDS / STORAGE

Insurers hereon note and agree that:

- Locations used for the storage of materials or equipment intended for the project, situated within 5 miles from the Site, are to be considered as being included under the definition of Site.

  For the purpose of clarity, the distance used for determination shall be the distance from the nearest Site boundary directly to the nearest boundary of that location.

- For such locations, as detailed in the attached information entitled Motiva PAR Crude Expansion Project, Storage and Laydown Schedule, dated 13 July 2009, situated outside of the 5 mile distance from site, the Offsite Storage sublimit in respect of each such location individually shall be increased to the value detailed therein as the estimated peak value (irrespective of year) any one Occurrence, if such is greater than the current USD 10,000,000 any one Occurrence limit.

- The Territory of the policy is extended to include these locations.

All other terms and conditions remain unchanged.

**Information:** Spreadsheet titled "Motiva PAR Crude Expansion Project, Storage and Laydown Yard Schedule, dated 13 July 2009" provided to underwriters.

# MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market / Carrier | Line Size / Participation | Assigned Policy Number | Sig/Stamp |
|---|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 70080 ( B0509MW001707) | |
| Liberty Mutual Insurance Company | USD 85,000,000, that being 10.00% of USD 850,000,000 | 3H588077001 | |
| Zurich American Insurance Company | USD 63,750,000, that being 7.50% of USD 850,000,000 | IM9002127-00 | |
| AIG Casualty Company | USD 42,500,000, that being 5.00% of USD 850,000,000 | 261-21-50 | |
| ACE American Insurance Company through Starr Tech | USD 34,000,000, that being 4.00% of USD 850,000,000 | CTFN04286091 | |
| General Security Indemnity Company of Arizona (SCOR) | USD 34,000,000, that being 4.00% of USD 850,000,000 | 2007 10F130911-1 | |
| Arch Insurance Company | USD 21,250,000, that being 2.50% of USD 850,000,000 | CAR0023080-00 | |
| Lancashire Insurance Company Limited | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Navigators Special Risks, Inc. | USD 8,500,000, that being 1.00% of USD 850,000,000 | 07 NSRO 1140-01 | |
| * Stellar (Saudi Aramco Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | TBD | |
| * Noble (Shell Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 350-1-MOTCAR157 | |

*Captive Participation not placed through Marsh.*

## MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN



ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

# ENDORSEMENT No. 007

| | |
|---|---|
| **INSURED:** | Motiva Enterprises, LLC |
| **POLICY NO.:** | MHOU07150 |
| **POLICY TERM:** | 1st September 2007 to 1st April 2012 |
| **EFFECTIVE DATE OF ENDORSEMENT:** | 00.01 am on 1st January 2010 local standard time at project site. |
| **TYPE:** | ERECTION ALL RISKS, DAMAGE TO EXISTING PROPERTY INSURANCE |

## WORDING AMENDMENTS

Insurers hereon note and agree that exclusion e) under the Construction All Risks policy wording is amended to:

e) The Damage resulting from any mechanism of corrosion, oxidation or erosion whether sudden or gradual and regardless of any other cause or event contributing concurrently or in any sequence to the loss, but this exclusion shall not apply

    I)      to other parts of the Property Insured then subsequently Damaged as a result of corrosion, oxidation or erosion, or

    II)    if, and to the extent that, the corrosion, oxidation or erosion is directly resulting from Named Windstorm.

In the event of II) above, if the loss adjustor is unable to determine if the applicable corrosion, oxidation or erosion is directly resulting from Named Windstorm, then the Principle Insured and Insurers hereby agree to each appoint an expert. In the event the parties or their experts cannot agree, a third expert acceptable to both parties shall be retained and their decision shall be binding on both parties. Each party shall pay the costs incurred by their retained expert and 50 percent of the costs incurred by the third expert.

Named Windstorm is defined as any atmospheric disturbance so named by the United States National Weather Service including any resulting flood, tidal or wave action.

In the event that the third expert is unable to conclusively make a determination with reference to II) then the Insured must demonstrate to Insurers reasonable satisfaction that any corrosion, oxidation or erosion was caused directly as a result of a Named Windstorm.

It is also noted and agreed that for a loss under II) to be admissible it must be notified to Insurers as soon as reasonably practicable after the event, but no later than 60 days following the Named Windstorm.

## MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO MOTIVA
ENTERPRISES, LLC EFFECTIVE 1ST SEPTEMBER 2007

Endorsement No. 007 Cont'd...

Furthermore the storage condition a) Storage of Materials is amended as follows:

It is a condition of this Section that the Named Insured shall

    a)    Storage of Materials

    In respect of materials, plant or machinery, stored away from the site in the open,
- ensure that such are not stored in a location that could reasonably be predicted to flood, or are raised off the ground, or
- ensure that such are stored in a watertight building, or are protected by a secure, waterproof covering, or in their original specified export packaging

    Perils: Flood / Inundation / Water.

All other terms and conditions remain unchanged.

**MARSH**

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u> <u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS – Endorsement No. 007

| Market / Carrier | Line Size / Participation | Assigned Policy Number | Sig/Stamp |
|---|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 70080 ( B0509MW001707) | |
| Liberty Mutual Insurance Company | USD 85,000,000, that being 10.00% of USD 850,000,000 | 3H588077001 | |
| Zurich American Insurance Company | USD 63,750,000, that being 7.50% of USD 850,000,000 | IM9002127-00 | |
| AIG Casualty Company | USD 42,500,000, that being 5.00% of USD 850,000,000 | 261-21-50 | |
| ACE American Insurance Company through Starr Tech | USD 34,000,000, that being 4.00% of USD 850,000,000 | CTFN04286091 | |
| General Security Indemnity Company of Arizona (SCOR) | USD 34,000,000, that being 4.00% of USD 850,000,000 | 2007 10F130911-1 | |
| Arch Insurance Company | USD 21,250,000, that being 2.50% of USD 850,000,000 | CAR0023080-00 | |
| Lancashire Insurance Company Limited | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Navigators Special Risks, Inc. | USD 8,500,000, that being 1.00% of USD 850,000,000 | 07 NSRO 1140-01 | |
| * Stellar (Saudi Aramco Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 3028 | |
| * Noble (Shell Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 350-1-MOTCAR157 | |

*Captive Participation not placed through Marsh.*

## MARSH

MARSH MERCER KROLL
GUY CARPENTER OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## ENDORSEMENT <u>No. 007ST</u>

| | |
|---|---|
| **INSURED:** | Motiva Enterprises, LLC |
| **POLICY NO.:** | MHOU07150 |
| **POLICY TERM:** | 1st September 2007 to 1st April 2012 |
| **EFFECTIVE DATE OF ENDORSEMENT:** | 00.01 am on 7th September 2010 local standard time at project site. |
| **TYPE:** | ERECTION ALL RISKS, DAMAGE TO EXISTING PROPERTY INSURANCE |

## WORDING AMENDMENTS

Insurer hereon notes and agrees that exclusion e) under the Construction All Risks policy wording is amended to:

e) corrosion, oxidation or erosion, unless such loss is caused directly by physical damage not otherwise excluded in this Policy to the property covered, but this exclusion shall not apply

    I)    If a peril not otherwise excluded from this Policy ensues directly or indirectly from corrosion, oxidation or erosion, then any physical loss or damage insured under this Policy arising directly from that ensuing peril shall (subject to the terms, condition and limitations of the Policy) be covered

    II)    If, and to the extent that the corrosion, oxidation or erosion is directly resulting from physical damage from Named Windstorm.

Named windstorm is defined as any atmospheric disturbance so named by the United States National Weather Service including any resulting flood, tidal or wave action.

It is also noted and agreed that for a loss under II) to be admissable it must be notified to the Insurers as soon as reasonably practicable after the event, but no later that 60 days following the Named Windstorm.

Furthermore the storage condition a) Storage of Materials is deleted in its entirety.

All other terms and conditions remain unchanged.

## MARSH

MARSH MERCER KROLL
GUY CARPENTER OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u> <u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## SIGNATURE OF SUBSCRIBING INSURER -- Endorsement No. 007ST

| Market / Carrier | Line Size / Participation | Assigned Policy Number | Sig/Stamp |
|---|---|---|---|
| ACE American Insurance Company through Starr Tech | USD 34,000,000, that being 4.00% of USD 850,000,000 | CTFN04286091 | |

MARSH

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## ENDORSEMENT No. 008

**INSURED:**              Motiva Enterprises, LLC

**POLICY NO.:**           MHOU07150

**POLICY TERM:**          1st September 2007 to 1st April 2012

**EFFECTIVE DATE**
**OF ENDORSEMENT:**       00.01 am on 3rd August 2010 local standard time at project
                          site.

**TYPE:**                 ERECTION ALL RISKS, DAMAGE TO EXISTING
                          PROPERTY INSURANCE

This contract is amended as follows:

Further to Endorsement No. 006, insurers hereon note and agree that the spreadsheet entitled "Motiva PAR Crude Expansion Project, Storage and Laydown Yard Schedule…" is updated per the attached version (dated 3rd August 2010).

All other terms and conditions remain unchanged.

**INFORMATION:**
See attached spreadsheet.

# MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA</u>
<u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market / Carrier | Line Size / Participation | Assigned Policy Number | Sig/Stamp |
|---|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 70080 ( B0509MW001707) | |
| Liberty Mutual Insurance Company | USD 85,000,000, that being 10.00% of USD 850,000,000 | 3H588077001 | |
| Zurich American Insurance Company | USD 63,750,000, that being 7.50% of USD 850,000,000 | IM9002127-00 | |
| AIG Casualty Company | USD 42,500,000, that being 5.00% of USD 850,000,000 | 261-21-50 | |
| ACE American Insurance Company through Starr Tech | USD 34,000,000, that being 4.00% of USD 850,000,000 | CTFN04286091 | |
| General Security Indemnity Company of Arizona (SCOR) | USD 34,000,000, that being 4.00% of USD 850,000,000 | 2007 10F130911-1 | |
| Arch Insurance Company | USD 21,250,000, that being 2.50% of USD 850,000,000 | CAR0023080-00 | |
| Lancashire Insurance Company Limited | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Navigators Special Risks, Inc. | USD 8,500,000, that being 1.00% of USD 850,000,000 | 07 NSRO 1140-01 | |
| * Stellar Insurance, Ltd. (Saudi Aramco Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 3028 | |
| * Noble Assurance (Shell Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 350-1-MOTCAR157 | |

*Captive Participation not placed through Marsh.*

## MARSH

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

**MARSH**

**CONTRACT ENDORSEMENT**

| | |
|---|---|
| Unique Market Reference: | B0509MW001707 |
| Endorsement Reference: | 9 |
| Type: | ERECTION ALL RISKS |
| Insured: | MOTIVA ENTERPRISES LLC |

This contract is amended as follows:

**ENDORSEMENT EFFECTIVE DATE:**     00:01am on the 21 December 2011 local standard time at site

Insurers hereon note and agree that;

1)   The Period of Insurance is extended until 23:59 on the 1 June 2012 including hot testing / commissioning / integrating / and initial operations.

2)   The estimated Insurable Value is amended to USD 7,066,000,000 (100%)

The additional premium due in respect of point 1 and 2 above shall be USD 3,183,599 (100%), USD 1,500,000 (100%) of this is payable within 60 days of final market agreement to this endorsement with the remaining USD 1,683,599 (100%) only payable should the ratio of claims paid to net underwriter premium be greater than 20%.

**Information;**
Review of Project Status dated November 2011
Hot testing/commissioning/integrating and initial operations plan dated 22nd November 2011
Swiss Re additional premium calculation email dated 15th December 2011

All other terms and conditions remain unchanged.

Insurer:_____

Signature:_____

1

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07150 ISSUED TO <u>MOTIVA ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## ENDORSEMENT <u>No. 010</u>

| | |
|---|---|
| **INSURED:** | Motiva Enterprises, LLC |
| **POLICY NO.:** | MHOU07150 |
| **POLICY TERM:** | 1st September 2007 to 1st July 2012 |
| **EFFECTIVE DATE OF ENDORSEMENT:** | 00.01 am on 1st June 2012 local standard time at project site. |
| **TYPE:** | ERECTION ALL RISKS, DAMAGE TO EXISTING PROPERTY INSURANCE |

This contract is amended as follows:

It is hereby noted and agreed that the Period of Insurance is extended until 23:59 on the 30th June 2012 including hot testing / commissioning / integrating / and initial operation.

Additional Premium due in respect of the above being USD 645,930 (100%), a minimum earned premium of 25% is applicable in respect of any pro-rata return premiums due if the project transfers to an operational policy prior to 1st July 2012.

All other terms and conditions remain unchanged.

SETTLEMENT DUE DATE:    1ST August 2012

INFORMATION:
- Monthly Project Management Report – March 2012
- Feed forward dates
- Project value update

**MARSH**

MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN

ATTACHED TO AND FORMING PART OF POLICY NUMBER MHOU07160 ISSUED TO <u>MOTIVA</u> <u>ENTERPRISES, LLC</u> EFFECTIVE 1ST SEPTEMBER 2007

## SCHEDULE OF SUBSCRIBING INSURERS

| Market/Carrier | Line Size/Participation | Assigned Policy Number | Sig/Stamp |
|---|---|---|---|
| SR International Business Insurance Company PLC "Swiss Re" (Lead Underwriter) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 70080 ( B0509MW001707) | |
| Liberty Mutual Insurance Company | USD 85,000,000, that being 10.00% of USD 850,000,000 | 3H588077001 | |
| Zurich American Insurance Company | USD 63,750,000, that being 7.50% of USD 850,000,000 | IM9002127-00 | |
| AIG Casualty Company | USD 42,500,000, that being 5.00% of USD 850,000,000 | 261-21-50 | |
| ACE American Insurance Company through Starr Tech | USD 34,000,000, that being 4.00% of USD 850,000,000 | CTFN04286091 | |
| General Security Indemnity Company of Arizona (SCOR) | USD 34,000,000, that being 4.00% of USD 850,000,000 | 2007 10F130911-1 | |
| Arch Insurance Company | USD 21,250,000, that being 2.50% of USD 850,000,000 | CAR0023080-00 | |
| Lancashire Insurance Company Limited | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Catlin, Lloyd's Syndicate No. 2003 SJC | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| O'Farrell, Lloyd's Syndicate No. 1036 COF | USD 17,000,000, that being 2.00% of USD 850,000,000 | B0509MW001707 | |
| Navigators Special Risks, Inc. | USD 8,500,000, that being 1.00% of USD 850,000,000 | 07 NSRO 1140-01 | |
| * Stellar Insurance, Ltd. (Saudi Aramco Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 3028 | |
| * Noble Assurance (Shell Captive) | USD 170,000,000, that being 20.00% of USD 850,000,000 | 350-1-MOTCAR157 | |

*Captive Participation not placed through Marsh.*

MARSH

MMK MARSH  MERCER  KROLL
GUY CARPENTER  OLIVER WYMAN